**ALEXANDRA HOUSE, INC., et al., Respondents,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant and Third Party Plaintiff, Appellant,**

v.

**Sharon DUGGAN, et al., Third Party Defendants, Respondents.**

No. C9–87–1705.

Court of Appeals of Minnesota.

Feb. 16, 1988.

Richard J. Thomas, Geraghty, O'Loughlin & Kenney, P.A., St. Paul, for St. Paul Fire & Marine Ins. Co.

James D. Hoeft, Herrick & Newman, P.A., Fridley, for Alexandra House, Inc., et al.

Gerald C. Magee, Minneapolis, for Sharon Duggan, et al.

Heard, considered and decided by RANDALL, P.J., and HUSPENI and STONE,* JJ.

## OPINION

HUSPENI, Judge.

Appellant, St. Paul Fire and Marine Insurance Company, provided respondent, Alexandra House, Inc., a shelter for battered women, with personal injury protection insurance. When respondent was sued by its employee, appellant withdrew its defense on the basis that the allegations in the complaint were not within the policy coverage. Respondent moved for summary judgment requesting a declaration that appellant had a duty to defend the action. On appeal from the summary judgment in respondent's favor, appellant contends that the trial court erred in declaring that appellant had a duty to defend and indemnify under the policy terms. We reverse.

## FACTS

Appellant sold an insurance policy to respondent to provide coverage for respondent's activities as a shelter for battered women. Only one portion of the insurance policy, the personal injury liability protection provision, is the subject of this appeal. That provision states in pertinent part:

We've designed this agreement to protect against personal injury claims that

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

result from certain acts committed in the course of your business. * * *

*Personal injury* means any of the following types of interference with someone's rights that happen in the course of your business * * *.

2. *Libel and slander.* If this coverage is indicated we'll cover claims for libel and slander, defamation of character or invasion of the rights of privacy. * * *.

\* \* \* \* \* \*

For us to pay, a claim must be based on an incident that happened in the course of your business * * *.

*Exclusions—Claims We Won't Cover*

*Employment-related claims.* Unless the Coverage Summary shows that this exclusion is deleted, we won't cover claims made by anyone because of personal injury related to his or her employment or application for employment by you. * * *

Both parties agree that the policy provided coverage for defamation and that the exclusion relating to employment related claims remained a part of the policy.

In January of 1982, respondent employed Sharon Duggan as a women's advocate at the shelter. After an incident involving a resident, Duggan was suspended from work and subsequently her employment was terminated when she refused to undergo counseling.

The incidents leading to Duggan's termination took place on February 24, 1984, when she visited the American Legion Hall with her daughter. Duggan, who was off duty, embraced an Alexandra House resident who came into the bar. The resident was accompanied by two Alexandra House employees who determined that the sexual nature of the Duggan embrace distressed the resident.

Three days later, one of the employees present at the American Legion Hall reported the incident to respondent. The employee's statement read:

I saw [Duggan] try to hug [the resident]. It appeared she was going to hug her, but then it was like she was all over her with her hands were just wildly all over

her. She must have brushed her entire body wherever her hands went. I saw this as awfully inappropriate as a violation. I had some feeling this was sexual.

The next day the woman's program coordinator suspended Duggan for one week without pay. The coordinator immediately notified the Minneapolis Rape and Sexual Assault Center of Duggan's suspension and the underlying allegations against her.

Subsequently, respondent conducted an inquiry at which the allegations against Duggan were reiterated. Respondent decided that Duggan would be reinstated if she successfully completed assessment and counseling in the areas of ethics, sexual coercion and alcohol abuse. Duggan was given the option of undergoing the assessment or losing her job. When she refused to comply, respondent terminated Duggan's employment.

On August 30, 1985, Duggan and her husband brought a lawsuit against respondent and its three employees. The complaint alleges seven separate causes of action. Count I alleges wrongful discharge; Count II alleges tortious interference with Duggan's employment contract; and Counts III and IV allege breach of employment contract. The parties agree that there is no policy coverage for Counts I to IV; however, respondent contends that coverage exists for Counts V and VI. Count V alleges breach of confidentiality and defamation:

[The coordinator], * * * notified [the Minneapolis Rape and Sexual Assault Center] * * * of [Duggan's] suspension and the allegations underlying said suspension.

Count VI alleges willful intent to injure Duggan in her employment, outrage and defamation:

[Respondent's employee] in the presence of the hearing of [the coordinator], * * * maliciously spoke of and concerning [Duggan] the following false and defamatory words, both with the knowledge that the words were false and with the willful intent to injure [Duggan] in her employment * * *.

Respondent additionally concedes that Count VII, which alleges negligent hiring by respondent, does not fall within the coverage of appellant's policy.

Appellant initially defended the Duggan lawsuit under a reservation of rights but later withdrew representation contending that its policy did not provide coverage.

The trial court in awarding summary judgment to respondent determined that for a defamatory statement to be employment related and thus subject to the policy's exclusionary clause, the statement must relate to "acts committed by the employee which were directly tied to the work involved." After considering the Duggan complaint, the trial court found:

> [T]he defamatory statements in the instant case are much broader in scope. The Duggan complaint alleges disgrace, humiliation, and damage to Sharon Duggan's reputation in the general community as well as with her friends, loved ones, and her husband. The alleged defamation does not just damage her professional reputation; it is deeply rooted in her personal life as well. * * * [T]hese statements were related to Sharon Duggan's sexual preference, and thus, go far beyond her ability to effectively function in the workplace.

In addition, the trial court found that the language in the employment related claims exclusion was ambiguous. The trial court concluded that Duggan's defamation claim was arguably within the coverage afforded by the personal injury liability protection policy and that appellant had a duty both to defend the lawsuit and to indemnify respondent.

### ISSUE

Did the trial court err in holding that appellant has a duty to defend the Duggan defamation claim and to indemnify respondent under the terms of its personal injury liability protection policy?

### ANALYSIS

When reviewing the grant of a summary judgment, we must ascertain that there was no issue of material fact before the trial court and that issuance of a summary judgment was proper as a matter of law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The parties agree that there are no issues of material fact in this case. Our review, therefore, is limited to determining whether the trial court erroneously ordered appellant to defend the Duggan lawsuit and to indemnify respondent.

Respondent contends that Duggan's allegations of defamation are covered by the personal injury protection policy issued by appellant. The supreme court in *Prahm v. Rupp Construction Company*, 277 N.W. 2d 389 (Minn.1979), held that:

> The obligation to defend is contractual in nature and is determined by the allegation of the complaint and the indemnity coverage of the policy. If any part of the cause of action is arguably within the scope of coverage, the insurer must defend.

*Id.* at 390.

Under the terms of the policy, the alleged defamatory statements must have been made during the course of respondent's business for coverage to exist. The hugging incident between Duggan and a resident of the shelter did not occur in the course of respondent's business. However, an employee's statements concerning the incident led to and were reiterated during respondent's review of Duggan's suitability for continued employment. Consequently, the statements were made in the course of respondent's business and to that extent fall within the policy coverage. There is no coverage, however, if the alleged defamation falls within the employment related claims exclusion.

Respondent had the option of coverage for employment related defamation but did not elect to purchase it. Consequently, respondent is bound by the language in the exclusion. Unless ambiguous, the language used in an insurance contract must be given its plain and ordinary meaning. *Bobich v. Oja*, 258 Minn. 287, 104 N.W.2d 19 (1960). The trial court found that the policy language which excluded employment related claims was "susceptible [to]

many different interpretations," and that its meaning should be resolved in favor of respondent. The trial court gave no explanation to support its conclusion that the clause was ambiguous. Although this is an issue properly determined initially by the trial court, a reviewing court is not bound by the conclusion reached.

■ We have reviewed the language used in the employment related claims exclusion and find no ambiguity. Consequently, a court may not thrust liability upon appellant which it did not contract for and for which no premium was paid. *Simon v. Milwaukee Automobile Mutual Insurance Company*, 262 Minn. 378, 391, 115 N.W.2d 40, 49 (1962). The exclusion clause states that appellant "won't cover claims made by anyone because of personal injury related to his or her employment * * *." The policy states that respondent is covered only for defamation which it commits in the course of operating the shelter for battered women. Under the plain meaning of the exclusionary language, there is no coverage for alleged statements made by respondent in the course of its business which injure an employee in relation to his or her employment.

We must next determine whether the alleged defamation claimed by Duggan is of the kind which would be excluded from coverage. Respondent suggests, and the trial court appeared to agree, that defamation is employment related only if the statement is directly linked to the employee's ability to effectively perform his or her job. *See, e.g., Frankson v. Design Space International*, 394 N.W.2d 140 (Minn.1986) (statement in a termination letter that an employee was terminated for failing to increase sales); *Lewis v. Equitable Life Assurance Society*, 389 N.W.2d 876 (Minn. 1986) (statement made during termination that employees' conduct in refusing to obey an order to reduce the totals on their expense claims and so provide the employer with a tax benefit, amounted to "gross insubordination"). The trial court apparently accepted respondent's argument that the defamation alleged by Duggan concerned sexual preferences, not her employ-

ment as a women's advocate, and determined that such defamation was not employment related because it caused Duggan damage which is "deeply rooted in her personal life" and "go[es] far beyond her ability to effectively function in the workplace." We cannot agree with the trial court's analysis. If the statements concerning Duggan's sexual preferences were not also related to her suitability as a women's advocate, those statements would have no relationship with respondent's business, and could not have met the "course of your business" requirement for coverage.

Appellant urges that there is no language in the policy which restricts the employment related defamation exclusion to defamation which is "directly tied to the work involved." On the contrary, argues appellant, the parties in contracting for coverage contemplated that the exclusion would cover all statements which affected a person's ability to continue as an employee or which resulted in discharge. Respondent further contends that the alleged defamatory statement led only to the employment review and because Duggan was discharged for refusing to undergo counseling, the statements are not employment related. Again, we find respondent's argument unpersuasive. Statements concerning an employee are employment related where they cause an employer to conduct an employment review and result in the employer requiring the employee to take part in counseling. We are not convinced that in the absence of the alleged defamatory statements respondent would have conducted the employment review, required Duggan to undergo counseling, or terminated her employment when she refused to comply with the requirement. Therefore, we find inescapable the conclusion that the allegations of defamation in the Duggan complaint are employment related and are therefore excluded from coverage by the policy terms.

Appellant has no duty to defend against the claims made in the Duggan lawsuit. Neither, of course, has it any duty to indemnify against those claims. *See Brown v. State Automobile & Casualty Underwriters*, 293 N.W.2d 822 (Minn.1980).

## DECISION

The trial court erred in determining that the allegation of defamation made by an employee of Alexandra House, Inc. was not employment related. The St. Paul Fire and Marine Insurance Company has no duty to defend the claim because employment related defamation is excluded from the coverage afforded by its personal injury liability protection policy.

Reversed.