[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DUTY TO DEFEND
This is a declaratory judgment action to determine a question of insurance coverage. The Town of West Hartford (the "Town") has been sued by a third party, James J. Larkin ("Larkin"). Larkin v.Town of West Hartford, 891 F. Sup. 719 (D. Conn. 1995), aff'd,
No. 95-7728 (2d Cir. March 25, 1996). The Connecticut Interlocal Risk Management Agency ("CIRMA") has brought this action seeking a declaration that (1) it has no duty to defend the Town as to Larkin's allegations and (2) it has no duty to indemnify the Town as to Larkin's allegations. At the time of the hearing, judgment had already entered for the Town in the Larkin action, although that decision had been appealed. Consequently, by agreement of the parties, this action has been bifurcated, and only the question concerning the duty to defend has now been presented. Pursuant to a scheduling order, the question concerning the duty to indemnify will be heard at a later time.
A hearing was held on the question of the duty to defend on February 14, 1996. The evidence consists exclusively of documents. For the reasons stated below, I conclude that CIRMA has a duty to defend the Town in the Larkin action.
The determination of whether CIRMA has a duty to defend depends on whether the complaint in the Larkin action states facts that appear to bring Larkin's claims of damages within the policy coverage. See Schwartz v. Stevenson, 37 Conn. App. 581,584, 657 A.2d 244 (1995), and authorities cited therein. The relevant documents are thus the Larkin complaint and the CT Page 3132 insurance policy. Both of these documents are in evidence and must now be described.
The Larkin action was filed in the United States District Court for the District of Connecticut. Larkin is the sole plaintiff. His complaint alleges that he served the Town as a fire lieutenant until December 31, 1992. The defendants are the Town and six individuals: Barry Feldman, Michael Parker, James Francis, Joseph Fioretti, Laurie Murray, and Patricia Gray. Each of these individuals (who will be referred to here by their last names) were Town employees at the time of the events in question and are sued in both their official and individual capacities. Feldman was the Town Manager; Parker was the Fire Chief; Francis was the Director of Employee Services; Fioretti was the Deputy Fire Chief; Murray was the Human Resource Specialist; and Gray was a firefighter. The complaint, brought pursuant to 42 U.S.C. § 1983, asserts two counts. The first count is directed against the individual defendants. The second count is directed against the Town.
The first count, consisting of forty-nine paragraphs, is verbose. Its essential allegations are as follows. In 1989, the Town contracted for the purchase of several new fire trucks and aerial ladders. In 1992, Larkin complained to Parker and Fioretti that the bid specification process was improper and that the equipment purchased was unsatisfactory. Fioretti asked Larkin if Larkin was trying to intimidate him. Larkin also complained to Parker that Gray had abandoned him inside a burning building. Gray complained on at least two occasions that Larkin had sexually harassed her. Larkin alleges that these claims are false. Parker determined that Gray's initial allegation was unsubstantiated, but Gray complained of that finding as well. Francis, Murray, and Feldman responded to Gray's second charge by initiating an investigation. Francis told Larkin's counsel that five separate sexual harassment incidents involving Larkin were under investigation. In the course of their investigation, Francis and Murray interviewed several firefighters. The complaint, dated June 18, 1993, describes the investigation as still continuing. During a Town Council meeting, broadcast on public access television, Feldman "intimated" that the allegations against Larkin were substantiated.
The first count alleges that the above-described actions of the individual defendants deprived Larkin of several different state and federal rights. Larkin claims that the defendants CT Page 3133 conspired to violate his civil rights and destroy his reputation by agreeing to initiate an unsubstantiated sexual harassment investigation in retaliation for his expression of his views concerning fire apparatus purchases. He claims that he has been defamed by the defendants, presented in a false light, and had his privacy invaded. He claims that the defendants have intentionally caused him emotional distress. He claims that by punishing him for disclosing illegal activities or unethical practices, the defendants have violated Conn. Gen. Stat. §31-51m. He claims that he has been deprived of his liberty and property without due process of law and that his right to free speech has been abridged. He claims that he has been deprived of rights afforded by the Town charter, ordinances, and personnel rules.
The second count of Larkin's complaint is directed against the Town. It consists of one additional paragraph and alleges that the actions of the Town described in the first count "were instituted, planned and conducted by the highest policy making officials of the Town."
On June 20, 1995, the Hon. Peter C. Dorsey filed a memorandum of decision in the Larkin case granting the Town's motion for summary judgment as to Larkin's federal claims and dismissing Larkin's state claims without prejudice. Larkin v. Town of WestHartford, supra, 891 F. Sup. 719.
Larkin appealed Judge Dorsey's decision to the United States Court of Appeals for the Second Circuit. On March 25, 1996, the Court of Appeals affirmed. Larkin v. Town of West Hartford, No. 95-7728 (2d Cir. March 25, 1996).
The insurance contract must now be described. It is a lengthy contract, but only a small portion of it is relevant to this case. The crucial section is § III(B), which describes coverage for personal injury liability. That section states that CIRMA "will pay on behalf of the insured all sums that the insured becomes legally obligated to pay as damages because of`personal injury' . . . to which this coverage applies." Policy, § III(B)(1)(a). (Emphasis in original.) "Personal injury" is a defined term. The definitions section of the policy defines it as injury, other than bodily injury, arising out of one or more of several enumerated "offenses." These "offenses" include "[m]alicious prosecution"; "[o]ral or written publication of material that slanders or libels a person or organization or CT Page 3134 disparages a person's or organization's goods, products, or services"; and "[o]ral or written publication of material that violates a person's right of privacy." Id. § I(P)(2), (4)(5). The coverage section additionally states that, "We will have the right and duty to defend any `suit' seeking those damages even if any of the allegations of the `suit' are groundless, false or fraudulent." Id. § III(B)(1)(a).
The coverage agreement just described is subject to certain "special exclusions." One of these exclusions is the focal point of this case. The policy's coverage does not apply to "[c]laims arising out of your official employment policies or practices (including but not limited to claims due to demotion, selection, dismissal, failure to promote, and similar activity)." Policy, § III(B)(2)(c).
It is undisputed that the Town notified CIRMA of the Larkin suit in a timely fashion. CIRMA refused to defend the action. It subsequently filed the present declaratory judgment.
CIRMA's argument focuses on a single point. It claims that it is not obliged to defend the Larkin suit because that action is a claim "arising out of [the Town's] official employment policies or practices." It reasons that
 The essence of Mr. Larkin's complaint is that the Town and its officials were engaged in an unjustified investigation of him. It is obvious from the face of the complaint that this investigation (whether justified or not) was not an idiosyncratic frolic but involved a Town policy or practice and that this policy or practice involved the Town employment status of Mr. Larkin or his accusers.
Letter Brief of CIRMA at 10. CIRMA argues that the exclusion for claims "arising out of [the Town's] official employment policies or practices" should be construed broadly; Hogle v. Hogle,167 Conn. 572, 356 A.2d 172 (1974); and that the parenthetical list in the exclusion is not a complete list. In contrast, the Town confines the definition of "official employment policies and practices" to Town policies or practices that are similar to those items specifically listed in the exclusion, i.e. employment status decisions.
The initial problem with CIRMA's argument is that it paints CT Page 3135 Larkin's complaint in overly broad strokes. CIRMA's duty to defend the Town in the Larkin lawsuit "depends on whether the complaint in that action stated facts that appear to bring [Larkin's] claims of damages within the policy coverage.Schurgast v. Schumann, 156 Conn. 471, 489, 242 A.2d 695 (1968);Missionaries of the Co. of Mary, Inc. v. Aetna Casualty SuretyCo., 155 Conn. 104, 110, 230 A.2d 21 (1967)." Schwartz v.Stevenson, supra, 37 Conn. App. at 584. When carefully examined, some of the allegations made by Larkin are unrelated to the investigation and do not arise "out of [the Town's] official employment policies or practices." This weakens CIRMA's position considerably because CIRMA has a duty to defend the Town even if only one "allegation of the complaint falls even possibly within the coverage." (Emphasis in original; citations omitted.) Id. at 585; see also Schurgast v. Schumann, supra, 156 Conn. at 490.
Larkin's complaint alleges that he has been defamed, presented in a false light, intentionally inflicted with emotional distress, and deprived of various statutory and constitutional rights. Moreover, while several factual allegations in the complaint are related to the investigation, other factual allegations are not. For example, Larkin claims he was harassed and verbally threatened for speaking out against the fire apparatus purchasing process. These allegations do not implicate the Town's process for demotion, selection, dismissal, promotion or any similar activity of the Town. These allegations are covered by the policy. CIRMA, consequently, has a duty to defend.
I do not intend to imply that the allegations relating to the sexual harassment investigation would necessarily be excluded under the policy. There is no claim that Larkin was demoted or dismissed, denied promotion, or that another employee was promoted ahead of him as a result of this investigation. Nor is there is an allegation that the Town changed his employment status because of the sexual harassment investigation.
CIRMA argues that the parenthetical list is not complete and that other employment policies and practices are excluded. The problem with this argument is that, beyond the list, the term "official employment policies and practices" is ambiguous and therefore, must be construed in favor of the insured. See SmedleyCo. v. Employers Mutual Liability Insurance Co., 143 Conn. 510,513, 123 A.2d 755 (1956). CT Page 3136
The parenthetical list states that "claims due to demotion, selection, dismissal, failure to promote and similar activity" are excluded. Beyond the parenthetical list, the policy offers no further explanation of the term "employment policies and practices." To be excluded the claim must be "due to" one of the specific changes in employment status listed or a "similar activity." "Similar" means "having characteristics in common . . .comparable . . . identical." Webster's Third New International Dictionary 2120 (1961). Thus, when appropriately construed in favor of the insured, "similar activity" contemplates employment status decisions of like kind, such as suspensions. A claim arising from an investigation into sexual harassment charges is not similar to a claim arising from a change in employment status. It would be a different case if Larkin had, for example, been fired. That case, however, is not this.
The language of the exclusion clause here contrasts sharply with the language of the exclusion clause before the court inPotomac Insurance Co. v. Peppers, 890 F. Sup. 634 (S.D. Tex. 1995), a case relied upon by CIRMA. Peppers considered an exclusion clause that read: "This insurance does not apply to 'personal injury' to a person arising out of any employment related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." Id. at 644. The court held that a defamation claim brought by a third party plaintiff was excluded under the contractual language just quoted. Id. at 645. If CIRMA had wished to exclude defamation claims from coverage, it could easily have used the Peppers language in its exclusion. It did not.
Significantly, CIRMA has not only omitted the Peppers
language from its exclusion clause but has affirmatively placed a variation of that language in its inclusionary definition of "personal injury." As already discussed, "personal injury, " which the policy in question here affirmatively covers, specifically includes injuries arising out of torts such as defamation and invasion of privacy. Policy, § I(P)(2), (4)(5). If CIRMA had wished to omit this language from its inclusionary clause or import this language into its exclusion clause, it could easily have done so. It did not.
Another variation of "employment related" exclusion clause language was presented in Alexandra House, Inc. v. St. Paul FireCT Page 3137 Marine Insurance Co;, 419 N.W.2d 506 (Minn.App. 1988), an authority on which CIRMA also relies. The Alexandra House policy stated that, "[W]e won't cover claims made by anyone because of personal injury related to his or her employment or application for employment by you." Id. at 508. This broad language was not limited by a parenthetical list of examples such as that used by the policy in this case. The court consequently found a third party's allegations of defamation to be "employment related." Id.
at 510. Because the parenthetical language was used in the present case, however, the analysis of Alexandra House is unhelpful. The same is true of McLeod v. Tecorp International,Ltd., 865 P.2d 1283 (Or. 1993), which analyzes contractual language similar to that considered in Alexandra House.865 P.2d at 1287.
At best, CIRMA's broad construction of its exclusion clause is a plausible one. The Town's construction of the clause, focusing on its parenthetical language, is, however, at least equally plausible. Under these circumstances, the Town must prevail. Our Supreme Court has long held that, "[I]f the terms are ambiguous and susceptible to more than one interpretation, that which is more favorable to the insured should be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses." Smedley Co. v. EmployersMutual Liability Insurance Co., supra, 143 Conn. at 513.
For the reasons set forth above, the court declares that CIRMA has a duty to defend the Town against Larkin's allegations.
As already mentioned, a scheduling order has previously been issued. A scheduling conference will be held on May 29, 1996. The question of what further issues must be considered by the court will be addressed at that time.
Jon C. Blue Judge of the Superior Court