**MEADOWBROOK, INC., et al.,**

v.

**TOWER INSURANCE COMPANY, INC., petitioner, Appellant.**

No. C6–95–1285.

Supreme Court of Minnesota.

Feb. 6, 1997.

Rehearing Denied March 18, 1997.

412 

Stapleton, Nolan & McCall, P.A., Mark Nolan, James T. Hynes, St. Paul, for appellant.

Mansfield & Tanick, P.A., Marshall H. Tanick, Teresa J. Ayling, Minneapolis, for respondents.

Meagher & Geer, P.L.L.P., William H. Hart, R.D. Blanchard, Minneapolis, for amicus curiae.

## OPINION

TOMLJANOVICH, Justice.

This is an appeal from a determination in a declaratory judgment action that the Tower Insurance Company, Inc. (hereinafter "insurer") had a duty to defend Meadowbrook, Inc., and its president and sole shareholder, S. Bruce Lansky (hereinafter "insured"), against a multi-claim lawsuit filed by four Meadowbrook employees in January 1991. The trial court entered four judgments totalling $228,834.13 to cover the insured's costs for both defending the underlying action and prosecuting the declaratory judgment action from March 26, 1992 until January 4, 1995. The insurer appealed all four judgments to the court of appeals, which affirmed the trial court's determination of the insurer's duty to defend and the first three judgments, but reversed and remanded for modification of the final judgment. *Meadowbrook, Inc. v. Tower Ins. Co., Inc.*, 543 N.W.2d 418 (Minn. App.1996). We reverse all four judgments and hold that the insurer's duty to defend the underlying action ceased upon the February 22, 1993 settlement of the defamation claims in the underlying action. In addition, we hold that the insurer must reimburse the insured only for those legal fees incurred in both defending the underlying action and prosecuting the declaratory judgment action prior to the settlement of the defamation claims on February 22, 1993.

Four Meadowbrook employees filed a claim in January 1991 against insured asserting, among other things, sexual harassment and defamation.[1] The insurer admitted that the defamation claims were arguably covered by the general business liability policy held by the insured, and assumed defense of the entire claim under a reservation of rights. The insurer retained the law firm of Jardine, Logan & O'Brien for the defense of the underlying action and suggested that the insured retain its own counsel to help it defend the uninsured claims. The insured retained the law firm of Mansfield & Tanick. The trial court in the underlying action on March 20, 1992 dismissed, among other things, the

---

1. Actually, three employees filed a claim on January 23, 1991. A fourth plaintiff later joined the action and the plaintiffs amended the complaint on August 23, 1991. The complaint contained the following substantive claims: sex discrimination, sexual harassment, race discrimination, Whistleblower Act violations, reprisal, negligent failure to have an adequate sexual harassment policy, negligent hiring and retention, intentional infliction of emotional distress, negligent supervision, negligent infliction of emotional distress, assault, battery, defamation, wrongful termination and promissory estoppel.

defamation claims.[2] The insurer withdrew its defense of the entire action 10 days later, and the insured, through Mansfield & Tanick, brought a declaratory judgment action on May 4, 1992.

The insurer, through the law firm of Stapleton, Nolan & McCall, moved for summary judgment in the declaratory judgment action, claiming its duty to defend the underlying action had ceased because the dismissal of the defamation claims left no claims upon which the policy arguably applied. The trial court denied the motion on the grounds that the dismissal of the defamation claims was not final under Minn. R. Civ. P. 54.02,[3] and subsequently entered judgment against the insurer for $79,153.58, the fees incurred by Mansfield & Tanick in defending the underlying action and prosecuting the instant action from March 26, 1992 until January 31, 1993. The insurer settled, among other things, the defamation claims with the plaintiffs in the underlying action on February 22, 1993[4] and moved again for summary judgment in the declaratory judgment action, claiming that the settlement rendered the dismissal of the defamation claims final within the meaning of Minn. R. Civ. P. 54.02. The trial court denied the motion, stating that even if the settlement of the defamation claims had rendered the dismissal final, the insurer's duty to defend continued because the remaining claims for sexual harassment, reprisal and Whistleblower Act[5] violations were arguably within the policy's coverage.

The trial court entered judgment for $23,264.13, the fees incurred by Mansfield & Tanick in defending the underlying action and prosecuting the instant action from February 1, 1993 until April 30, 1993. The insurer appealed the judgment to the court of appeals, but the court dismissed the claim as premature pending final judgment on the indemnity issue. The insured on December 20, 1993 received a third judgment for $32,169.92, the amount of fees incurred by Mansfield & Tanick in defending the underlying action and prosecuting the instant action from May 1, 1993 until September 30, 1993. The insurer moved for a stay of judgment, but the trial court denied the motion and both the court of appeals and this court denied review. The insurer paid $137,171.63[6] to satisfy the three judgments.

Two of the plaintiffs in the underlying action advanced to trial in January 1994[7] and received verdicts of $136,500 against the insured on claims for hostile work environment sexual harassment.[8] The insured subsequently settled the claims. The trial court in the instant action ruled on January 4, 1995 that the insurer had no duty to indemnify the insured for damages paid to any of the four plaintiffs. The court also ruled that the in-

---

2. The following claims had been dismissed following the March 20, 1992 order: race discrimination, negligent failure to have an adequate sexual harassment policy; negligent hiring and retention; negligent supervision; negligent infliction of emotional distress; defamation and promissory estoppel. The following claims remained: sex discrimination; sexual harassment, Whistleblower Act violations, reprisal, intentional infliction of emotional distress, assault, battery and wrongful termination.

3. Rule 54.02 reads:
 When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

4. Along with settling the claims for defamation, the plaintiffs in the underlying action settled claims for intentional infliction of emotional distress, assault, battery and wrongful termination.

5. Minn.Stat. § 181.932, subd. 1(a) (1996) is commonly known as the Whistleblower Act.

6. Although the sum of the three judgments actually is $134,587.63, it is undisputed that the insurer paid $137,171.63. The record does not explain the discrepancy.

7. The other two plaintiffs settled their claims for nominal amounts.

8. The court did not rule on the claims for reprisal or Whistleblower Act violations.

surer's duty to defend never ceased, and subsequently entered a fourth judgment against the insurer for $94,246.50, the fees incurred by Mansfield & Tanick in defending the underlying action and prosecuting the instant action from May 1, 1993. The court of appeals affirmed the trial court on the issue of the insurer's duty to defend and affirmed the first three judgments, but reversed and remanded part of the final judgment, stating that the insurer's duty to defend did not extend to the fees incurred by the insured in seeking indemnification.

The insurer admits that the defamation claims in the underlying action obligated it to defend all claims against the insured. The insurer argues, however, that once the defamation claims were dismissed by partial summary judgment, its obligation to defend ceased because none of the remaining claims arguably fell within the scope of the policy's coverage. Although the trial court eventually determined that all remaining claims fell outside the policy's coverage for the purpose of indemnification,[9] the insured argues that the duty to defend continued because the insurer assumed defense of the entire claim and could not as a matter of law unilaterally abandon the defense without court approval. In the alternative, the insured argues that the duty to defend did not cease because the remaining claims arguably were within the policy's coverage.

## I.

■ On appeal from summary judgment, this court must determine whether any genuine issues of material fact exist. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Interpretation of an insurance policy is a question of law. *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 886–87 (Minn.1978).

■ An insurer's duty to defend an insured is contractual. *Inland Const. Corp. v. Continental Cas. Co.,* 258 N.W.2d 881, 883

(Minn.1977) (citing *Bituminous Cas. Corp. v. Bartlett,* 307 Minn. 72, 75, 240 N.W.2d 310, 312 (1976)). The duty to defend is broader than the duty to indemnify. *St. Paul Fire & Marine Ins. Co. v. Lenzmeier,* 309 Minn. 134, 139, 243 N.W.2d 153, 156 (1976). Such a duty to defend generally covers those claims that arguably fall within the scope of the policy. *Inland Const. Corp.,* 258 N.W.2d at 884 (citing *Christian v. Royal Ins. Co.,* 185 Minn. 180, 240 N.W. 365 (1932)). In determining the existence of such a duty, a court will compare the allegations in the *complaint* in the underlying action with the relevant language in the *insurance policy. Ross v. Briggs and Morgan,* 540 N.W.2d 843, 847 (Minn.1995) (citing *Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389, 390 (Minn.1977)).

Both the trial court and the insured correctly asserted that no Minnesota appellate court has ruled on the ability of an insurer to unilaterally withdraw its defense following the *dismissal* of all coverable claims. At least two cases, however, have dealt with the issue of withdrawal, and in neither case did this court or the court of appeals state that an insurer could not unilaterally withdraw its defense no matter the circumstances. In *Crum v. Anchor Cas. Co.,* 264 Minn. 378, 385, 119 N.W.2d 703, 708 (1963) we held that the insurer could not withdraw after assuming the insured's defense, but only because the insurer was aware of facts that arguably placed part of the underlying claim within the policy's coverage. In *Alexandra House, Inc. v. St. Paul Fire and Marine Ins. Co.,* 419 N.W.2d 506, 510 (Minn.App.1988), the court of appeals allowed an insurer to withdraw after concluding that the insurer never had a duty to defend. Although neither case is directly on point, both indicate by their analyses that an insurer's duty to defend is not an interminable one.[10] As we stated in *Crum:*

> In most cases * * * it will not be difficult for the insurer to compel the injured party to disclose whether the injury is within the

---

9. The issue of indemnification was not appealed by the insured and is not before this court.

10. New York's highest court once stated that "[t]he insurer's duty to defend is, again, not an *interminable* one, and will end if and when it is

shown unequivocally that the damages alleged would not be covered by the policy." *Sturges Mfg. Co. v. Utica Mut. Ins. Co.,* 37 N.Y.2d 69, 371 N.Y.S.2d 444, 448, 332 N.E.2d 319, 323 (1975) (emphasis added).

policy; and, if it transpires that it is not, the insurer need go on no longer.

*Crum,* 264 Minn. at 390, 119 N.W.2d at 711 (quoting *Lee v. Aetna Cas. & Surety Co.,* 178 F.2d 750, 752 (2nd Cir.1949)).

Similarly, other jurisdictions have relied on the rule that an insurer can withdraw from a defense after all arguably covered claims have been extinguished. *Commercial Union Ins. Co. v. Pittsburgh Corning Corp.,* 789 F.2d 214, 218 (3rd Cir.1986) (interpreting Pennsylvania law to allow withdrawal after policy limits have been reached); *Harborside Refrigerated Services, Inc. v. IARW Ins. Co., Ltd.,* 759 F.2d 829, 830 (11th Cir.1985) (stating that insurer was responsible for entire defense until covered claim was dropped from action); *Sachs v. St. Paul Fire & Marine Ins. Co.,* 303 F.Supp. 1339, 1341 (D.D.C. 1969) (stating that an insurer's duty to defend "lasts until a stage of the proceedings is reached at which it is clear that no element of the subject matter of the suit is within the scope of the policy"); *City of Myrtle Point v. Pacific Indem. Co.,* 233 F.Supp. 193, 197 (D.Or.1963) (stating that the insurer would be obliged to defend the suit "until it could confine the claim to a recovery that the policy did not cover"). The insured, by comparison, offers no support for the rule that an insurer who undertakes a defense cannot withdraw without court approval.[11]

■ Although the insured argues that public policy requires courts to block insurers from "casting adrift" an insured in the midst of litigation, we conclude that public policy requires the opposite rule. To require an insurer who undertakes a defense on the basis of arguably covered claims to remain in the litigation even after those claims have been resolved, is to force the insurer to defend claims not arguably covered by the policy.[12] Such a rule also would encourage insurers to avoid defending lawsuits that actually include arguably covered claims. The result would be an increase in declaratory judgment actions brought by insureds to force insurers to perform their contractually mandated duties. Consequently, we hold that an insurer who undertakes an insured's defense under a reservation of rights can withdraw its defense once all arguably covered claims have been dismissed with finality.

## II.

■ Although we have concluded that insurers can withdraw from a defense once all arguably covered claims have been dismissed, we must determine at what point the dismissal of the defamation claims became final. An insurer's duty to defend claims arguably within the policy's coverage extends until it can be concluded as a *matter of law* that there is no basis on which the insurer may be obligated to indemnify the insured. *Woida v. North Star Mut. Ins. Co.,* 306 N.W.2d 570, 574 (Minn.1981). As a result, the duty to defend extends through the appellate process. *See* 7C John A. Appleman, *Insurance Law and Practice* § 4688, at 200 (Berdal ed. 1979) ("The insurer's obligation to defend the suit against the insured does not end with a successful verdict in the trial court but includes the defense of any appeals that the claimant may make."); *see also City of West Haven v. Commercial Union Ins. Co.,* 894 F.2d 540, 545–46 (2nd Cir.1990).

■ The Minnesota Rules of Civil Procedure state that the dismissal via partial summary judgment of some claims within a multi-claim complaint will not become final until there is "an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

---

11. An insured in Texas argued that an insurer who elected to defend an action, even under a full reservation of rights, had no right to withdraw such defense once it had been undertaken. The court noted that the argument "would have more persuasiveness if it were supported by *any* authority. It cites none, and our research does not indicate that the proposition advanced has any merit." *Consolidated Underwriters v. Loyd W. Richardson Constr. Corp.,* 444 S.W.2d 781, 784–85 (Tex.Ct.App.1969).

12. Many claims ultimately found to be outside a policy's coverage can, at the time of litigation, fall within the arguable reach of the policy's scope. But whether the remaining claims in the underlying lawsuit were arguably covered by the general liability policy is a different question, and one we will address in Section III.

Minn. R. Civ. P. 54.02 (1996). In the absence of an express determination by the trial court, summary judgment of some of the claims "shall not terminate the action as to any of the claims." Minn. R. Civ. P. 54.02 (1996). As a result, the plaintiffs in a multi-claim lawsuit cannot appeal the dismissal of some of the claims until the remaining claims within the complaint have been adjudicated. *See Pederson v. Rose Coop. Creamery Ass'n,* 326 N.W.2d 657, 660 (Minn.1982). The insured, therefore, argues that the partial summary judgment did not dismiss the defamation claims with sufficient finality to allow the insurer to withdraw its defense. The insurer argues that the order was final for the purposes of determining that there no longer was a basis upon which it was obligated to defend the suit.

■ No Minnesota cases are on point, but the Hawaii Supreme Court decided a case with facts nearly identical to those before us and concluded that an insurer could not withdraw from an insured's defense after a partial summary judgment until either a "Rule 54(b) certification was granted and the appeal period had expired or a final judgment had disposed of the entire case." *Commerce & Indus. Ins. Co. v. Bank of Hawaii,* 73 Haw. 322, 832 P.2d 733, 737 (1992).[13] Although we are not bound by the Hawaii decision, we adopt its reasoning and hold that an insurer cannot withdraw from a defense until its duty to defend all arguably covered claims has been completely extinguished—in other words, when no further rights to appeal those arguably covered claims exist.

■ Under this rule, the trial court's partial summary judgment dismissing the defamation claims on March 20, 1992 did not relieve the insurer of its duty to defend those claims upon appeal. Because the insurer's duty to defend extended through appeal, that

duty did not end until the plaintiffs in the underlying action had no further rights to appeal those claims.[14] Prior to the settlement on February 22, 1993, the plaintiffs retained their rights to appeal the trial court's dismissal of those claims. Consequently, the duty to defend did not cease until February 22, 1993.

■ The insured argues that, assuming this to be the rule, this court should not allow insurers to shirk their duties of defense by unilaterally settling only the arguably covered claims. Meadowbrook contends that the insurer in the instant case operated against the insured's best interests by negotiating a settlement of the arguably covered claims "behind the back" of the insured. But such an argument is without merit. Even though the insurer agreed to defend the entire claim against the insured, its duty extended only to those claims arguably covered by the policy.[15] Once the insurer settled and paid those claims, it had completely performed its contractual duty. The insured assumes he had a right to force the insurer to defend claims not arguably covered by the policy, but he did not. Regardless of the insurer's motivation in settling the defamation claims, the fact remains that the insurer's action relieved the insured of any liability resulting from those arguably coverable claims.

### III.

The settlement of the defamation claims does not relieve the insurer of its duty to defend the lawsuit if any of the claims remaining after the February 22, 1993 settlement were arguably covered by the policy. Consequently, we turn our attention to the policy, and whether any such claims remained.

**13.** Hawaii's Rule 54(b) is nearly identical to Minn. R. Civ. P. 54.02.

**14.** Although Rule 54.02 does not permit an appeal until final adjudication of other claims in the complaint, the right to appeal remained intact.

**15.** Had the insurer failed to notify the insured in a reservation of rights letter that it was undertak-

ing the defense only upon the basis of the defamation claims, the insurer possibly would have an estoppel argument. But since the insurer sent such a letter and even suggested that the insured retain his own counsel to help defend those actions not arguably covered by the policy, the insured cannot now argue that the withdrawal harmed its defense.

An insurer seeking to establish that it does not have a duty to defend must show that each claim asserted in the lawsuit "clearly falls outside" the policy. *Jostens, Inc. v. Mission Ins. Co.,* 387 N.W.2d 161, 165–66 (Minn.1986); *Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389, 390 (Minn.1977). Concurrently, the law obligates an insurer to defend only those *types of claims* for which it arguably could be found liable. *Bobich v. Oja,* 258 Minn. 287, 293, 104 N.W.2d 19, 24 (1960).

The insurance policy in the case at bar provides that Tower "shall have the right and duty to defend any claim or suit against the insured seeking damages payable under this policy, even though the allegations of the suit may be groundless, false or fraudulent." The policy further provides that Tower:

> will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury,[16] property damage or personal injury[17] caused by an occurrence to which this insurance applies.

The policy defines occurrence as "an accident * * * which results in bodily injury * * * neither expected nor intended from the standpoint of the insured." In addition, the policy does not apply to "bodily injury to any employee of the insured arising out of and in the course and scope of his employment by the insured."

16. The policy defines bodily injury to mean "bodily injury, sickness or disease."

17. The policy defines personal injury to mean "injury which arises out of one or more of the following offenses committed in the conduct of the named insured's business." Such offenses are limited to false arrest, detention or imprisonment; malicious prosecution; the publication or utterance of a libel or slander or of other defamatory or disparaging material; and wrongful entry or eviction, or other invasion of the right of private occupancy.

18. The insured argues that this clause is contradictory with others in the policy because it would have excluded the employee plaintiffs' claims for defamation which the insurer admitted were covered. What the insured fails to note, however, is that while the defamation claim related to *personal injury,* the employee exclusion relates only to *bodily injury.* Thus the exclusion did not bar claims for *personal injury* based on defamation.

The insurer admitted that the policy covered all damages resulting from the plaintiffs' claims for personal injury caused by defamation. Once the trial court dismissed the claims for defamation, however, the insurer asserted—and the insured did not dispute—that none of the remaining claims was the type of "offense" that would have triggered the insurer's obligation to cover damages for *personal injury.* Consequently, Tower's duty to defend will turn on whether the remaining *claims* as alleged in the *complaint* arguably were within the policy's protection for *bodily injuries.* Such a claim is covered only if it meets each of the following three conditions: 1) It is a claim for bodily injury, 2) that was caused by an occurrence, and 3) was not suffered by "any employee of the insured arising out of and in the course and scope of his employment by the insured."[18]

The insurer, therefore, has the burden of establishing that each of the remaining claims asserted by the plaintiffs in the underlying action clearly falls outside the policy, but to do so, it need show that each claim fails to satisfy *only one* of the above mentioned three elements. *See Sage Co. v. Ins.Co. of North Am.,* 480 N.W.2d 695, 698 (Minn.App.1992). To properly determine Tower's duty to defend, therefore, this court must examine each claim that survived the February 22, 1993 settlement to determine if any of those claims fulfilled each of the three requirements mentioned above.[19] Although

19. It is important to note that both insurer and insured rely heavily upon facts outside those alleged in the underlying action's *complaint.* As was stated earlier, this court typically will determine a duty to defend by comparing only those allegations in the *complaint* with the appropriate language in the *policy. Ross v. Briggs and Morgan,* 540 N.W.2d 843, 847 (Minn.1995); *see also Crum v. Anchor Cas. Co.,* 264 Minn. 378, 385, 119 N.W.2d 703, 708 (1963) (stating that Minnesota is in accord with the general rule that "initial determination that an insurer is not obligated to defend a cause of action against its insured may be made from the facts alleged in the complaint"). Only when actual facts within the insurer's knowledge clearly establish the existence or nonexistence of an obligation to defend, will this court hold that the complaint is not controlling. *Bituminous Casualty Corp. v. Bartlett,* 307 Minn. 72, 75, 240 N.W.2d 310, 312 (1976).

claims for sexual harassment, reprisal and Whistleblower Act violations remained, the claims for reprisal and Whistleblower Act violations fall clearly outside the scope of the policy's coverage and therefore do not merit any further consideration.[20] We therefore turn our attention to the only remaining claim, hostile work environment sexual harassment.

## A. Bodily injury

■ Each of the plaintiffs in the underlying action asserted in the complaint that she suffered "bodily injuries" as a result of the insurer's alleged acts of sexual harassment. The insurer argues that the plaintiffs' specific "bodily injuries" alleged in the complaint were nothing more than symptoms "of emotional injury." Consequently, the insurer asserts that the specific injuries listed in the complaint fell outside the policy's definition of "bodily injury" because they did not rise to the level of "appreciable physical manifestations" required in *Garvis v. Employers Mut. Cas. Co.*, 497 N.W.2d 254, 257 (Minn.1993). The insurer's argument misses the point of *Garvis*, however. The issue in *Garvis* was not whether claims for *bodily injuries* were arguably within the scope of a policy's coverage for bodily injuries, but whether claims for *emotional distress* included allegations of sufficient physical manifestations to arguably fit within the scope of a policy's coverage for bodily injuries. *Garvis*, 497 N.W.2d at 257 (stating that "[t]he problem with plaintiff's complaint is it alleges only that defendant Demuth's conduct 'did cause her extreme and severe emotional distress' "). An insurer's obligation to defend its named insured does not depend on the merits of the claim asserted but on whether the allegations of the *complaint* against the insured state a cause of action within the coverage afforded by the *policy*. *Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 332–33, 204 N.W.2d

426, 429 (1973). In the case at bar, plaintiffs included claims for emotional distress *and* bodily injury, and therefore the insurer cannot withhold its defense on the grounds that the claims for emotional distress did not include sufficient physical manifestations to fit within the policy's bodily injury coverage.

This alone does not qualify the remaining claim of sexual harassment as arguably within the scope of the policy's coverage, however. The policy obligates the insurer to cover only those bodily injury claims caused by an occurrence, and then, only those bodily injury claims not otherwise excluded by the language of the policy. We choose not to address at this time, however, whether a claim for hostile work environment sexual harassment is an occurrence as defined by the policy. Instead, we turn our attention to the employment-exclusion, a clause that we conclude places the claim for hostile work environment sexual harassment clearly outside the scope of the policy's coverage.

## B. Employment exclusion

The policy excludes coverage for "bodily injury to any employee of the insured arising out of and in the course and scope of his employment by the insured." Unless ambiguous, the language used in an insurance contract must be given its plain and ordinary meaning. *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). Typically, this court has defined the words 'arising out of' in an insurance policy to mean 'causally connected with' and not 'proximately caused by.' *Faber v. Roelofs*, 311 Minn. 428, 437, 250 N.W.2d 817, 822 (1977). The question in the instant case thus becomes whether the plaintiffs' allegations of hostile work environment sexual harassment were claims by employees

---

20. The claim for violation of the Whistleblower Act is barred as a matter of law, *see Williams v. St. Paul Ramsey Med. Center, Inc.*, 551 N.W.2d 483 (Minn.1996) (holding that reprisal claims brought under the Minnesota Human Rights Act bar claims for violation of the Whistleblower Act). The claim for reprisal, meanwhile, includes as a necessary element the intent to harm the plaintiffs. *See* Minn.Stat. § 363.03, subd. 7

(1996) (prohibiting an employer from "intentionally" engaging in any reprisal); *see also Williams*, 551 N.W.2d at 485 (stating that the reprisal statute "is specific in its prohibition of intentional reprisal"). The policy covers only those bodily injury claims caused by accidental or unintentional behavior, consequently, the policy clearly does not cover the claim for reprisal.

causally connected with employment.[21]

■ The court of appeals held that the plaintiffs' claims for sexual harassment did not necessarily fit within the employment exclusion clause because it found that the exclusion did not apply to "all of the *conduct* cited by the plaintiffs." *Meadowbrook*, 543 N.W.2d at 425. The court then referred to three specific instances asserted in the complaint that "occurred outside the scope of [plaintiffs'] employment." *Id.* Assuming for the sake of argument that these instances in fact occurred outside the scope of the plaintiffs' employment,[22] the court of appeals' holding that "the injuries allegedly caused by these incidents arguably did not arise out of *and in the course of* their employment" is still mistaken. *Id.* (emphasis in the original). Although the plaintiffs alleged instances of *conduct* that occurred outside "the course and scope" of their employment, the *injuries* allegedly caused by these instances were directly related to the creation of a hostile *work* environment. *See* Minn.Stat. § 363.01, subd. 41(3) (1996) (hostile environment claims available only in context of employment, public accommodations, public services, education or housing). In assessing whether an insurer has a duty to defend, the court must focus on the *claim* and whether its elements fit within the exclusion. *Ross v. Briggs and Morgan*, 540 N.W.2d 843 (Minn. 1995). In this case, the court of appeals mistakenly focused on some of the *conduct* being asserted to prove the *claim*. The *claim* asserted that the environment in which the plaintiffs *worked* had become hostile. It is incongruous to hold that such a claim can arise anywhere but in the course and scope of a plaintiffs' employment.

## IV.

■ In conclusion, we hold that the insurer's duty to defend the insured from the claims in the underlying action ceased on February 22, 1993. As a result, the insurer is liable for those attorney fees incurred by the insured in defending the underlying action from the time of the insurer's withdrawal on March 30, 1992 through February 22, 1993. In addition, we hold that the insurer is liable for those attorney fees incurred by the insured in prosecuting the declaratory judgment action through February 22, 1993. Legal fees generally are not recoverable, but attorney fees are recoverable in a declaratory judgment action if the insured proves that the insurer breached a contractual duty. *American Standard Ins. Co. v. Le*, 551 N.W.2d 923, 926–27 (Minn.1996) (restating rule that attorney fees are recoverable in a declaratory judgment action only if there is a breach of a contractual duty, "usually by wrongfully refusing to defend the insured"). Because we held that the insurer's duty to defend did not cease until February 22, 1993, the insurer necessarily breached that duty from March 31, 1992 until February 22, 1993. Conversely, the insurer did not breach any duty after that date and is not liable for attorney fees incurred by the insured subsequent to February 22, 1993.

We therefore reverse the judgment of the court of appeals and remand to the trial court for determination of the attorney fees

21. Despite the plain meaning of the employment-exclusion clause in the Meadowbrook policy, *see Alexandra House*, 419 N.W.2d at 510 (finding no ambiguity in a similarly worded employment exclusion), the insured argues that the exclusion should apply only to claims that are covered by workers' compensation insurance. Because the claims in the underlying action were not covered by workers' compensation, the insured argues that the employment exclusion is inapplicable here.

The fact that the policy specifically excludes any coverage for obligations "of which the insured or any carrier as his insurer may be held liable under the workers' or workmen's compensation, * * * or under any similar law" defeats this argument, however. *See National Union*

*Fire Ins. Co. v. Kasler Corp.*, 906 F.2d 196, 199 (5th Cir.1990) (holding that a similar employment-exclusion clause—when paired with an express workers' compensation exclusion clause—had the effect of excluding from coverage "work-related bodily injury" claims not otherwise covered by workers' compensation).

22. It is at least arguable that all three of the instances in fact were within the employment context. The first was a remark during a pre-employment interview. *See Interco Inc. v. Mission Ins. Co.*, 808 F.2d 682, 685 (8th Cir.1987) (stating that the term employment includes the initial hiring process). The second was a pinch at a *company* volleyball game. And the third included telephone calls from the employer to the employee at her home.

incurred by the insured in defending the underlying action and prosecuting the declaratory judgment action up to and including February 22, 1993.

Reversed and remanded.

BLATZ, J. took no part in the consideration or decision of this case.