**MORONI FEED COMPANY,**
Plaintiff–Appellee,

v.

**MUTUAL SERVICE CASUALTY INSURANCE COMPANY,**
Defendant–Appellant.

No. 01–4008.

United States Court of Appeals, Tenth Circuit.

May 1, 2002.

Tim Dalton Dunn (Paul J. Simonson with him on the briefs) of Dunn & Dunn, P.C., Salt Lake City, UT, for Defendant–Appellant.

Julianne P. Blanch (Michael R. Carlston, Stanley J. Preston, and Camille N. Johnson with her on the brief) of Snow, Christensen & Martineau, Salt Lake City, UT, for Plaintiff–Appellee.

Before EBEL, McKAY, and LUCERO, Circuit Judges.

McKAY, Circuit Judge.

Mutual Service Casualty Insurance Company ("Mutual Service") issued a Commercial General Liability policy ("CGL") and an Umbrella Liability policy ("Umbrella") to Moroni Feed Company. While coverage was effective, Joseph C. Nielsen, former president of Moroni Feed Company, sued Moroni Feed bringing eleven separate claims. Mutual Service denied coverage for the Nielsen lawsuit. Moroni Feed brought suit in state court seeking a declaratory judgment that Mutual Service owed a defense and indemnity to Moroni Feed for the Nielsen suit. The suit was removed to federal court, based on diversity jurisdiction. Both parties filed motions for summary judgment.

The district court determined that, of the eleven causes of action in the Nielsen suit, only the tenth cause of action could possibly trigger coverage under Mutual Service's policies. This cause of action alleged defamation resulting from employment-related comments made by Moroni Feed's various employees and officers. The district court concluded that the CGL policy specifically excluded coverage for personal injuries resulting from defamation. However, the district court also concluded that exclusion t of the Umbrella policy was ambiguous, triggering coverage for the Nielsen lawsuit. Mutual Service appeals the district court's finding that exclusion t is ambiguous and its Umbrella policy provides Moroni Feed coverage for the Nielsen suit. Moroni Feed did not appeal the district court's finding that the CGL policy provided no coverage for the allegations contained in the Nielsen complaint.

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1402 (10th Cir.1997). If the insurance policy's language is clear and unambiguous, it must be construed according to the policy's plain meaning. *Utah Power & Light Co. v. Fed. Ins. Co.,* 983 F.2d 1549, 1553 (10th Cir.1993).

■ We begin by noting that Moroni Feed's vicarious liability for defamation, if any, necessarily depends on statements made by its employees within the scope of their employment. Statements made by Moroni Feed's employees outside the scope of their employment could subject the employees to personal liability but could not make Moroni Feed liable. Thus, the district court correctly concluded that only statements made by Moroni Feed employees within their scope of employment (tenth cause of action) could possibly trig-

ger coverage under Mutual Service's policies.

Mutual Service's Umbrella policy divides coverage into two sections. Coverage A provides "excess" coverage to underlying insurance, but only if that underlying insurance also provides coverage for the claim in question. Because the district court found that the CGL policy (underlying insurance) did not provide coverage for the Nielsen litigation, Coverage A of the Umbrella policy is inapplicable.

■ Coverage B of the Umbrella policy provides insurance coverage for injuries not covered by underlying insurance provided that the particular type of injury is not specifically excluded. At issue is exclusion t, which excludes coverage for "injury arising out of the employment practices of the insured, including wrongful dismissal of, or wrongful termination of, or discrimination against any officer or employee." Aplt.App. at 57. The Umbrella policy does not specifically define the term "employment practice."

The district court found exclusion t ambiguous. "[E]xclusion t could be construed to except insurance coverage for employment-related acts by Moroni Feed such as the 'wrongful termination' or 'wrongful dismissal' of an employee, or it [could] be construed to except insurance coverage for only 'employment practices' by Moroni Feed such as discrimination." Aplt.App. at 11. Noting that "ambiguous exclusions in insurance policies are construed against the insurer," the district court concluded that Mutual Service's Umbrella policy provided coverage for Mr. Nielsen's defamation claim. *Id.*

We cannot agree with the district court's finding that exclusion t is ambiguous. The use of the word "including" simply gives *examples* of activities considered to be "employment practices" for purposes of

coverage under the insurance policy. Nothing, however, supports the district court's conclusion that the exclusion could also be interpreted to exclude *only* three types of employment practices (wrongful dismissal, wrongful termination, or discrimination).

When interpreting the policy provisions of an insurance contract, we must give language its usual and ordinary meaning. *Village Inn Apts. v. State Farm Fire & Cas. Co.*, 790 P.2d 581, 583 (Utah Ct.App. 1990). The word at issue is "including." Webster defines include as "to take in, enfold, or comprise as a discrete or subordinate part or item *of a larger aggregate, group, or principle.*" Webster's Third New International Dictionary 1143 (1986) (emphasis added). Thus, the three acts following the word "including" are simply illustrative examples of some of the types of employment-related practices not covered under the policy. *See Camp v. Deseret Mut. Benefit Ass'n*, 589 P.2d 780, 781 (Utah 1979) (items listed under "medical supplies and equipment" are examples of type of items covered under the policy). The three examples cannot be considered an exhaustive list.

This interpretation is also consistent with common usage of the term "including." For example, if an avid sports fan were to say, "I enjoy all sports including hockey and soccer," the hearer would assume that the sports fan enjoys all sports—hockey and soccer being examples. The hearer would not assume that the sports fan only enjoys hockey and soccer. Therefore, we find that exclusion t unambiguously excludes all employment practices.

■ Because we find exclusion to be unambiguous, we must determine whether defamation by employees within the scope of their employment can be considered an "employment practice." Moroni Feed correctly points out that the term "employment practice" is not specifically defined in the Umbrella policy. However, this is not fatal to Mutual Casualty's position. When coverage or exclusions are described by a list of examples rather than specifically defined, the court must determine whether an item not listed as an example falls within the general description of the coverage or exclusion. *See id.* at 781–82 (analyzing whether a specially equipped van qualified as "medical supplies and equipment").

Obviously, Moroni Feed's liability, and therefore its policy coverage, extends only to the charged acts of its employees occurring within the scope of their employment. Conversely, Moroni Feed cannot be held liable and Mutual Service's policy would not cover statements made by Moroni Feed's employees outside of the scope of their employment. In analyzing Moroni Feed's claim of coverage, we need only consider Mr. Nielsen's allegations regarding statements made by Moroni Feed's employees within the scope of their employment.

In Mr. Nielsen's amended complaint, he alleged that various board members defamed him by stating that he was a drug addict and entered the homes of others with the intent to steal drugs. Aplt.App. at 70–73. Specifically, the complaint addresses statements made at a board meeting convened to determine Moroni Feed's appropriate course of action regarding Mr. Nielsen's employment status. *Id.*

The employees' statements caused Moroni Feed to conduct a review of Mr. Nielsen's employment. As a result, Moroni Feed required Mr. Nielsen to undergo counseling and ultimately decided to discharge him. Thus, the statements are employment related. *See, e.g., Alexandra House, Inc. v. St. Paul Fire & Marine Ins.*

**1294**

Co., 419 N.W.2d 506, 510 (Minn.Ct.App. 1988). Additionally, these statements addressed Mr. Nielsen's continued employment, discipline, potential discharge, or justification for Moroni Feed's decision to discharge Mr. Nielsen.

Exclusion t prohibits coverage for " 'injury' *arising out of* the employment practices of the insured...." Aplt.App. at 57 (emphasis added). "Practice" means "to carry on or engage in (an activity or process)." Webster's at 1780. Nothing in other cases or in this record suggests that an alternative definition of the word "practice" should be used. Because the statements were employment related, made while carrying on the process of evaluating Mr. Nielsen's employment status, and closely tied to his allegedly wrongful dismissal (one of the listed examples defining "employment practices"), we find that the statements arose out of Moroni Feed's employment practices.

In sum, we find that exclusion t of the Umbrella policy is unambiguous. We also find that coverage for the injury Mr. Nielsen suffered as a result of the statements made by Moroni Feed's employees is excluded under exclusion of the Umbrella policy. Accordingly, the district court's decision is reversed, and we remand for entry of judgment in favor of Mutual Service Casualty Insurance.

**REVERSED AND REMANDED.**