## ST. PAUL FIRE AND MARINE INSURANCE COMPANY v. ROGER R. LENZMEIER AND OTHERS.

243 N. W. 2d 153.

June 11, 1976—No. 45830.

*Roger R. Lenzmeier,* pro se, for appellant.

*Altman, Geraghty, Mulally & Weiss* and *James W. Kenney,* for respondent.

Heard before Rogosheske, Todd, and Breunig, JJ., and considered and decided by the court en banc.

PER CURIAM.

Roger Lenzmeier appeals from a declaratory judgment finding that St. Paul Fire & Marine Insurance Company (hereinafter "the company") was not obligated to defend him in certain law-

suits under personal liability coverage in a homeowner's policy. We affirm.

In January 1973, Roger Lenzmeier commenced two actions against his wife, Darlene, seeking (1) divorce and (2) specific performance of an antenuptial agreement under which he believed that he was entitled to partition of the homestead in the event of divorce. Darlene Lenzmeier was represented in this litigation by an attorney, Desmond Pratt. The trial court granted an absolute divorce but denied partition of the homestead. This court affirmed in Lenzmeier v. Lenzmeier, 304 Minn. 568, 231 N. W. 2d 71 (1975).

On or about April 15, 1974, Roger Lenzmeier, an attorney, commenced separate pro se actions against Darlene Lenzmeier and Desmond Pratt, alleging various intentional and tortious acts in the earlier divorce and partition proceedings. On or about May 8, 1974, Darlene Lenzmeier and Desmond Pratt each counterclaimed, alleging abuse of legal process.

At the time Roger Lenzmeier commenced his pro se actions against Darlene Lenzmeier and Desmond Pratt, he was living in a home owned by Lyle and Melba Lawson. A homeowner's insurance policy issued by the company to the Lawsons was in effect. The following provisions are pertinent:

"COVERAGE E—PERSONAL LIABILITY

"This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, * * *."

"8. DEFINITIONS: * * *

"a. 'Insured' means

"(1) the Named Insured stated in the Declarations of this Policy;

"(2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any Insured; * * *."

"ADDITIONAL DEFINITIONS

* * * * *

"1. 'bodily injury': means bodily injury, sickness or disease, including care, loss of services and death resulting therefrom.

* * * * *

"4. 'property damage': means injury to or destruction of tangible property, including loss of use thereof.

"5. 'occurrence': means an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage."

"EXCLUSIONS

"This policy does not apply:

"1. Under Coverage E * * *:

* * * * *

"c. to bodily injury or property damage arising out of the rendering of or failing to render professional services;

"d. to bodily injury or property damage arising out of business pursuits of any Insured except activities therein which are ordinarily incident to non-business pursuits;

* * * * *

"f. to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

Roger Lenzmeier tendered to the company the defense of the counterclaims, apparently believing (1) that he was an "insured" as a resident of the household who was a relative of the named insured—his deceased first wife, Barbara, was a niece of Melba Lawson; (2) that the counterclaims alleged "physical and emotional distress" which constituted "bodily injury" within the personal liability coverage; and (3) that his pro se actions of April, 1974, which were the basis for the allegation of "abuse

of legal process" in the counterclaims, constituted "occurrences" within the personal liability coverage.

The company instituted this declaratory judgment action, seeking a determination of whether it was obligated to defend Roger Lenzmeier against the counterclaims. Roger Lenzmeier counterclaimed against the company, apparently implicating the company in his claims against Desmond Pratt because the company was Pratt's professional liability insurer and had selected the law firm representing Pratt and had authorized said firm to file Pratt's counterclaim.

The company filed a motion for bifurcated trial of its declaratory judgment action and Roger Lenzmeier's counterclaim. Roger Lenzmeier opposed this motion and further moved that both matters be tried before a jury. In addition, both parties made motions relative to pretrial discovery, in essence the company seeking to avoid discovery by Roger Lenzmeier. The trial court granted the company's motion for bifurcated trial, denied trial by jury as to the declaratory judgment action, and continued the motions relative to pretrial discovery.

Thereafter, the trial court decided in the declaratory judgment action that the company was not obligated to defend Roger Lenzmeier against the counterclaims of Darlene Lenzmeier and Desmond Pratt because (1) Roger Lenzmeier was not an "insured" as defined in the policy; (2) there was no "bodily injury or property damage" as defined in the policy; and (3) this personal liability coverage by its terms excluded damages arising out of a lawyer's representation either of himself or of others in a professional capacity and damages arising out of intentional torts such as abuse of process.

If the trial court was correct on any one of these three findings, then denial of coverage was also correct. Because we agree that the alleged abuse of process by Roger Lenzmeier, which is the subject of these counterclaims by Darlene Lenzmeier and Desmond Pratt, is explicitly excluded from this personal liability coverage, we need not decide whether Roger Lenzmeier was an

"insured" or whether "bodily injury" includes emotional distress, absent physical impact. Before discussing the merits, however, we will address two procedural issues which have been raised.

First, it is argued that the trial court erred in denying Roger Lenzmeier a jury trial of the declaratory judgment action. Section 9 of the Uniform Declaratory Judgments Act, Minn. St. 555.09, safeguards the right of jury trial only "in its appropriate sphere." State Farm Mutual Auto Ins. Co. v. Skluzacek, 208 Minn. 443, 447, 294 N. W. 413, 415 (1940). The question here is whether any fact issues are involved which require jury trial. Citing 46 C. J. S., Insurance, § 1368, Roger Lenzmeier contends that the construction of ambiguous terms in an insurance contract is always a jury question. If there were disputed parol evidence concerning the intent of the parties when drafting these provisions, submission to the jury would be appropriate. Here there was no such extrinsic evidence, and construction of the contract was a question of law for the court. Midway Center Associates v. Midway Center, Inc. 306 Minn. 352, 356, 237 N. W. 2d 76, 78 (1975).

The second procedural issue raised by Roger Lenzmeier on appeal is that the trial court was obligated to decide the pending discovery motions before hearing the declaratory judgment action. We have examined the disputed interrogatories and requests for admissions and find that they either (1) concern the relationship between the company and Desmond Pratt, so that they are relevant only to the counterclaim of Roger Lenzmeier against the company and were not necessary to his defense in the declaratory judgment action; or (2) to the extent relevant, concerned facts later proved at trial and accepted by the court as undisputed; or (3) attempted through admissions to establish the very points of law which were to be determined in the declaratory judgment action. We do not think that Roger Lenzmeier was prejudiced by the trial court's refusal to decide his discovery motion.

On the merits, then, the explicit terms of the policy exclude

coverage for damages arising out of the rendition of professional services or this type of intentional tort. Moreover, the company is only obligated to pay damages caused by an "occurrence," which is defined as an accident. Nevertheless, Roger Lenzmeier argues that the obligation to furnish a defense is broader than the duty to pay, citing Sucrest Corp. v. Fisher Governor Co. Inc. 83 Misc. 2d 394, 400, 371 N. Y. S. 2d 927, 935 (1975). While the duty to defend is broader in the sense that the company must defend against groundless claims for which no obligation to pay will arise, the insurer must only defend suits seeking damages on account of "such" bodily injury, referring back to injuries "to which this insurance applies, caused by an occurrence." Since explicit exclusions make the insurance inapplicable, and since no accidental occurrence is involved, there is no duty to defend. Cf. Bituminous Cas. Corp. v. Bartlett, 307 Minn. 72, 240 N. W. 2d 310 (1976).

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.