**REINSURANCE ASSOCIATION OF MINNESOTA, Now known as RAM Mutual Insurance Company, Appellant,**

v.

**Raymond F. TIMMER, Roma Jean Timmer, Individually and d/b/a Timmer Cattle Sales, Respondents, David G. Johnstone, Diane M. Johnstone, Respondents, Lake Country State Bank, Respondents,**

and

**Raymond F. Timmer, Defendant and Third–Party Plaintiff, Respondent;**

v.

**Allen Hoelscher, d/b/a Hoelscher Insurance Agency, Third–Party Defendant.**

No. C0–01–1681.

Court of Appeals of Minnesota.

March 12, 2002.

Review Denied May 14, 2002.

Thomas D. Jensen, William L. Davidson, Kimberly Fleming, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, for appellant.

Paul F. Carlson, Kennedy & Nervig, LLP, Wadena, for respondents Timmers.

David G. Johnstone, Diane M. Johnstone, c/o Gregory Leyh, Kansas City, pro se.

John C. Lervick, Alexandria, for respondent Lake Country State Bank.

Bradley C. Warner, Moore, Warner & Kruger, St. Paul, for Third–Party Defendant.

Considered and decided by SCHUMACHER, Presiding Judge, HANSON, Judge, and HUSPENI, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

HANSON, Judge.

This is an appeal from summary judgment in a declaratory judgment action. The district court ruled that the Farmer's Comprehensive Personal Liability policy, issued by appellant insurer, provided coverage for claims made against the respondent insured arising out of the insured's sale of diseased dairy cows. The district court concluded that the appellant insurer owed duties both to defend and to indemnify respondent insured.

Because we conclude that insured's cattle sales operation is a "farm operation" under the policy's language, and that some of the buyer's claims arguably arise from an "occurrence" and do not fall under any of the policy's exclusions, we affirm the district court's judgment as to the insurer's duty to defend. But because we conclude that some of the buyer's claims do not arise from an "occurrence" or fall under policy exclusions, we reverse the district court's judgment as to insurer's duty to indemnify. The insurer's motion to supplement the record, to include new documents from the underlying action, is denied.

## FACTS

Respondents Raymond F. Timmer and Roma Jean Timmer (Timmers) operate a farm in Long Prairie, Minnesota. Since 1988, the Timmers obtained Farmer's Comprehensive Personal Liability insurance from appellant Reinsurance Association of Minnesota, now known as RAM Mutual Insurance Company (RAM). When the Timmers were sued by respondents David G. Johnstone and Diane M. Johnstone (Johnstones), they tendered the defense of that action to RAM. RAM then brought this action seeking declaratory relief.

In the underlying action, the Johnstones allege that the Timmers sold them 100 dairy cows, some of which were infected with bovine viral diarrhea (BVD) virus. At the time of the sale, the Timmers did not have 100 cows at their farm and obtained 72 of the cows from two other farms and delivered them directly from those two farms to the Johnstones. The Timmers then purchased the remaining cows at three separate auctions, brought these cows to their farm for approximately six days, and then delivered them to the Johnstones. The Johnstones allege that the infected cows introduced the BVD virus into their herd, causing loss of milk production, breeding problems and the death of some animals. The Johnstones' three-count complaint alleges claims for (1) breach of express and implied warranties, (2) fraud and misrepresentation, and (3) consumer fraud in violation of the Minnesota Prevention of Consumer Fraud Act, Minn.Stat. § 325F.68–70.

RAM's declaratory judgment action asserts that it has no duty to defend or indemnify the Timmers under the policy because the losses claimed by the Johnstones arose out of the Timmers' business activities, separate from their "farm operations"; did not arise out of an "occurrence"; and were the result of risks that were excluded by the policy. Both parties filed cross-motions for summary judgment.

The district court granted the Timmers' motion for summary judgment, ruling both that RAM had a duty to defend and a duty to indemnify. The court concluded that the policy covered the Johnstones' claims because, as a matter of law:

(1) the term "farm operations" was ambiguous and should be construed broadly against RAM to include the Timmers' cattle sales operation;

(2) the introduction of the BVD virus to the Johnstones' herd was an "occurrence" under the RAM policy;

(3) the loss of or injury to the cows that were healthy before the delivery by the Timmers was "property damage" under the RAM policy;

(4) the consequential damages alleged by the Johnstones, if proven, represent "sums for which [the Timmers are] liable by law because of * * * property damage," and thus are covered under the RAM policy;

(5) the policy exclusions, including "business activities," "intentional acts," "rendering of professional services," and "owned property" are inapplicable to the undisputed facts;

(6) the "business-risk doctrine" and the "products-sold" exclusion apply only to the loss of or injury to the cows that were infected with the BVD virus before they were delivered by the Timmers to the Johnstones; and

(7) under the facts and circumstances, including RAM's affirmative conduct on which the Timmers relied, RAM is estopped from denying its duty to defend and indemnify the Timmers.

The district court entered judgment against RAM. This appeal followed.

On appeal, RAM moved to supplement the record to include a transcript and an order of the district court in the Johnstones' case.

### ISSUES

I. Should RAM's motion to supplement the record be granted?

II. Did the district court err by construing the term "farm operations" to include the Timmers' cattle-selling activities?

III. Are any of the Johnstones' claims arguably within the coverage of RAM's policy?

### ANALYSIS

The district court can properly determine the construction and interpretation of insurance policies on a motion for summary judgment and appellate courts will review the district court's decision de novo. *See Brown v. State Auto. & Cas. Underwriters,* 293 N.W.2d 822 (Minn.1980) (reviewing district court's grant of summary judgment based on its construction and interpretation of insurance policy provisions); *Am. Family Ins. Co. v. Walser,* 628 N.W.2d 605, 609 (Minn.2001) (stating appellate courts' standards of review of district court's interpretation of an insurance policy). When interpreting insurance policies, appellate courts apply general principles of contract interpretation. *Sphere Drake Ins. PLC v. Trisko,* 24 F.Supp.2d 985, 991 (D.Minn.1998); *Lobeck v. State Farm Mut. Auto. Ins. Co.,* 582 N.W.2d 246, 249 (Minn.1998).

"An insurer assumes two duties to its insured: the duty to defend and the duty to indemnify." *St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.,* 496 N.W.2d 411, 415 (Minn.App. 1993), *review denied* (Minn. Apr. 29, 1993). "An insurer's duty to defend is distinct from and broader in scope than the duty to indemnify." *Franklin v. W. Nat'l Mut. Ins. Co.,* 574 N.W.2d 405, 406 (Minn.1998). The duty to defend arises when any part of the claim against the insured is arguably within the policy's scope. *Metro. Prop. & Cas. Ins. Co. v. Miller,* 589 N.W.2d 297, 299 (Minn.1999). If a complaint alleges several claims, and *any one* of them would require the insurer to indemnify, the insurer must provide a defense against all claims. *Franklin,* 574 N.W.2d at 406–07.

Conversely, to establish a duty to indemnify, the insured must prove that *all* claims alleged in the complaint fall within the policy coverage. Otherwise, the possibility that the insured's liability might ultimately be based solely on a non-covered claim presents genuine issues of material fact that preclude summary judgment. *See* Minn. R. Civ. P. 56.03 (stating standards for summary judgment); *see also Brown,* 293 N.W.2d at 825–26 (affirming summary judgment on duty to defend but reversing summary judgment on duty to indemnify where coverage turned on an underlying fact issue). Thus, if any one of the claims alleged in the complaint falls outside of the policy coverage, the question of the duty to indemnify is not ripe and the district court's judgment must be deferred until the decision in the underlying action is final.

RAM argues that it has no duty to indemnify the Timmers on any of the Johnstones' claims, and thus it has no duty to defend.[1] Accordingly, we will examine each of the Johnstones' claims to determine (1) whether RAM arguably has a duty to indemnify the Timmers on any one of them, which would impose a duty to defend, and, conversely, (2) whether RAM clearly has no duty to indemnify the Timmers on any one of them, which would preclude summary judgment on the issue of RAM's duty to indemnify.

For purposes of our examination, we find it convenient to separate the analysis into two parts: first, whether the Timmers' cattle sales operation is an activity to which the policy applies and, second, whether the injuries allegedly suffered by the Johnstones are the result of risks covered by the policy. The district court's memorandum of law is remarkably thorough, which has significantly assisted our review.

## I

Preliminarily, we will address RAM's two motions to supplement the record to include (1) the partial transcript of a summary judgment motion hearing in the Johnstones' action and (2) a copy of the district court's order granting partial summary judgment in the Johnstones' action.

The record on appeal consists of the "papers filed in the [district] court, the exhibits, and the transcript of the proceedings, if any." Minn. R. Civ.App. P. 110.01. "An appellate court may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below." *Thiele v. Stich,* 425 N.W.2d 580, 582–83 (Minn.1988). The supreme court, however, has recognized an exception to this rule "when the evidence is documentary evidence of a conclusive nature (uncontroverted) which supports the result obtained in the [district] court." *In re Real Property Taxes for the 1980 Assessment, Village Apartments v. State,* 335 N.W.2d 717, 718 n. 3 (Minn.1983) (citations omitted).

The transcript of the hearing in the Johnstones' lawsuit does not fit within the exception to the rule because it is offered for the purpose of reversing, rather than supporting, the district court. The order granting partial summary judgment in the Johnstones' action, dismissing the claims for breach of warranties, does not fit within the exception for the same reason. Moreover, it is not final. A decision that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not final, and is subject to revi-

---

1. RAM is presently defending the Timmers in the underlying action under a reservation of rights.

sion at any time. Minn. R. Civ.App. P. 104.01, subd. 1. For these reasons, we deny RAM's motion to supplement the record and limit our review to the record before the district court.

## II

RAM argues that the district court erred by construing the term farm operations to include the Timmers cattle-selling activities.

Curiously, RAMs policy contains a definition of farm operations but does not use that precise term in describing the coverage being provided. The significance of the term farm operations must be discerned by a process of elimination. Thus, the personal liability coverage (coverage L) is stated broadly as follows:

> **We** pay, up to **our** limit, all sums for which an **insured** is liable by law because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

But the general exclusions narrow this coverage by providing:

> This policy does not apply to liability which results directly or indirectly from: * * *
>
> 6. activities related to the **business** of an **insured,** * * *.

And, finally, the policy states that

> **Business** means a trade, a profession or other occupation (not including farming), all whether full or part-time, or the rental of any property to others.

Thus, in this rather awkward manner, the policy provides liability coverage for the activity of "farm operations," but not for any business activity other than "farming." Stated more precisely, RAM's policy applies to claims caused by an occurrence that arises from the Timmers' farm operations, but does not apply to claims arising from the Timmers' non-farming business operations. Therefore, if the Timmers' cattle-selling operation is within the policy's definition of "farm-operations," coverage L applies and, conversely, the "business" exclusion does not apply.

### A. Ambiguity

 If an insurance contract is clear and unambiguous, a reviewing court gives the language its usual meaning. *Walser,* 628 N.W.2d at 609. Reviewing courts, however, will construe any ambiguity regarding coverage in favor of the insured. *Id.* An ambiguity exists when a word or phrase in an insurance contract is reasonably subject to more than one interpretation. *Reinsurance Ass'n of Minn. v. Hanks,* 539 N.W.2d 793, 796 (Minn.1995).

 RAM's policy defines "farm operations" as "those operations usual and incidental to agriculture, including the cultivation of land, raising of farm products and raising and feeding of livestock." RAM argues that the Timmers' cattle-selling activities were not "usual and incidental" to agriculture. But RAM is forced to concede that some buying and selling of cattle is usual and incidental to agriculture. RAM's Vice President of Agency Services, Richard Newton, stated in his deposition that:

> The buying and selling of cattle is usually incidental to agriculture if [the farm includes] the raising and feeding of livestock. All farmers buy and sell cattle.

Thus, the real focus of RAM's argument is on whether "farm operations" is limited to the selling of cows that were first raised and fed on the insured's farm. RAM argues because many of the cows sold to the Johnstones never set foot on the Timmers' farm, they were not "raised" by the Timmers and, therefore, are not part of the covered farm operations.

The district court concluded that the definition of "farm operations" was ambiguous. It correctly observed that the "raising and feeding" clause is introduced by the verb "including," which is not a term of limitation. Also, it noted that the policy does not define the term "raised," leaving open the period of time the cows would have to be on the farm to be considered "raised." It concluded, therefore, that the activities of raising and feeding the cattle were not shown to be prerequisites to coverage.

We agree with the district court that the definition of "farm operations" does not state that the cows must have been raised on the farm, and that the policy does not define "raised." As a result, the term "farm operations" can be construed in more than one way and is ambiguous.

> [T]he very fact that [insurer's and insured's] respective positions as to what this policy says are so contrary compels one to conclude that the agreement is indeed ambiguous.

*Gen. Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 153 (Minn.App.2001) (quoting *N.W. Airlines, Inc. v. Globe Indem. Co.*, 303 Minn. 16, 26, 225 N.W.2d 831, 837 (1975)) (first alteration in original), *review denied* (Minn. Apr. 17, 2001). This ambiguity must be resolved in favor of the Timmers and in favor of coverage. *See Walser*, 628 N.W.2d at 609 (stating that "any ambiguity regarding coverage is construed in favor of the insured"). Accordingly, we affirm the district court's decision that the Timmers' cattle-selling activities were within their farm operations.

## B. Estoppel

■ The district court also concluded that RAM should be estopped, by its affirmative conduct, from denying that the Timmers' cattle-selling activities were within their farm operations. The court based that conclusion on several undisputed facts. The Timmers had always disclosed to the insurance agent the actual nature of their cattle-selling activities. The agent conducted several on-site inspections, over the approximately 14 years that the policy was in place, and each time communicated his observations regarding the operation to RAM. *See, e.g., Zimmerman v. Bankers' Cas. Co.*, 138 Minn. 442, 444–45, 165 N.W. 271, 272 (1917) (imputing agent's knowledge to the insurer). In fact, the agent specifically asked RAM whether liability coverage would be affected by the fact that "the insured deals in the buying and selling of cattle." RAM did not respond to this inquiry, but notified the agent that the Timmers did not need separate liability coverage for the cattle-selling office on the farm because "buying and selling cattle is considered part of the normal farming operation and is insured under the [insurance] coverages." Also, in the first year that RAM issued the policy, RAM paid a claim brought against the Timmers arising out of the sale of a cow that had been treated with antibiotics because the cow's milk contaminated the purchaser's entire milk tank.

■ We agree that these facts support the district court's conclusion that RAM was estopped from denying that the Timmers' cattle-selling activities were part of their farm operations.[2] RAM correctly notes that estoppel cannot be used to enlarge the coverage of an insurance policy.

---

2. To the extent that the district court's decision implies that estoppel more broadly precludes denial of coverage, including denial of the application of policy exclusions, we would not agree because the facts supporting estoppel only relate to the activities covered by the policy, not to the specific risks arising from those activities.

*See Shannon v. Great Am. Ins. Co.,* 276 N.W.2d 77, 78 (Minn.1979) (stating this rule). But the district court did not enlarge the policy's coverage. Instead it used the evidence of estoppel to confirm the conclusion reached independently, that the term "farm operations" should be construed to include the Timmers' cattle-selling activities. This same evidence could also be used as proof of the parties' practical construction of an otherwise ambiguous term. *See J.J. Brooksbank Co. v. Budget Rent–A–Car Corp.,* 337 N.W.2d 372, 376 (Minn.1983) (stating that the practical construction the parties give to the contract is persuasive evidence of what they intended by it).

Because we agree with the district court that the Timmers' cattle-selling activities are part of their "farm operations," and not a "business," the policy applies to the cattle-selling activities and coverage is not excluded by the policy's business exclusion.

### III

RAM argues that even if we determine that the Timmers' cattle-selling activities are part of their "farm operations," the Johnstones' claims do not arise from risks that are covered by the policy. RAM contends that the Johnstones' claims arise from an intentional act and not an occurrence, involve damages for economic losses that do not qualify as "property damages," and are excluded from coverage by the business-risk doctrine and "products sold" exclusion.

In determining whether a policy arguably provides coverage, an appellate court must "compare the allegations in the complaint in the underlying action with the relevant language in the insurance policy." *Meadowbrook, Inc. v. Tower Ins. Co.,* 559 N.W.2d 411, 420 (Minn.1997) (emphasis omitted) (citations omitted). While the district court correctly observed that

"Minnesota law does allow the courts to go beyond the face of the complaint when determining the true nature of the claims at issue," citing *Johnson v. AID Ins. Co.,* 287 N.W.2d 663, 665 (Minn.1980), we are not convinced that the law allows the court to determine coverage on the basis of claims that could have been made (for example, are suggested by the fact pattern) but were not.

Thus, we believe the district court was incorrect in characterizing the Johnstones' complaint as follows:

> Plaintiffs Johnstone base their claims against Timmer on alternative theories of negligence, including (a) Defendant Timmer failed to vaccinate the cows for BVD; or (b) Defendant Timmer failed to vaccinate the cows with a vaccine effective against all strains of BVD; or (c) Defendant Timmer failed to employ appropriate procedures in storing and administering an effective vaccine to the animals; or (d) Defendant Timmer was negligent in failing to appropriately examine the dairy cows, thus failing to determine that some of the dairy cows sold to Johnstones were infected with BVD.

Our reading of the complaint suggests that the Johnstones studiously avoided making any claims for ordinary negligence, perhaps to avoid the limitations on economic loss damages. *See* Minn.Stat. § 604.10 (2000) (providing that economic loss arising from the sale of goods between merchants is not recoverable in tort, except in fraud actions). Thus, we do not think the complaint can reasonably be construed to allege claims for ordinary negligence.

For purposes of determining arguable coverage, we will limit ourselves to the causes of action alleged in the complaint. Those causes of action are for breach of warranties, fraud, and consumer

fraud. As to fraud and consumer fraud, because the complaint does not distinguish between intentional and negligent misrepresentation, we conclude that the complaint can reasonably be construed to include both.

We can dispense with any consideration of the Johnstones claims for intentional fraud. In the memorandum accompanying its order, the district court concluded that

> R[AM]s duty to indemnify would not extend to any liability of Timmer[s] found to result from fraud or intentional misrepresentation, or from a knowing transfer of animals to [buyer that insured] knew were infected with the BVD virus.

The Timmers have not asked us to review this conclusion. *See* Minn. R. Civ.App. P. 106 (requiring notice of review for respondent to obtain review of adverse ruling); *see also Arndt v. Am. Family Ins. Co.*, 394 N.W.2d 791, 793 (Minn.1986) (stating this court correctly refused to address respondents' claims where notice of review was not filed). Thus, we will address only whether the Johnstones' claims for damages under theories of breach of warranties, negligent misrepresentation, and negligent consumer fraud could arguably require RAM to indemnify the Timmers.

## A. Breach of Warranties

Typically, insurance policies do not provide coverage for contractual liabilities, essentially because those liabilities are not based on an "accident" arising from an "occurrence." *See, e.g., Johnson*, 287 N.W.2d at 665 (holding that a contractor's intentional violation of a contract does not establish an "occurrence"). Also, coverage

for contractual liabilities generally is precluded by the "intentional acts" exclusion.

The district court concluded, however, that Coverage "N" of RAM's policy specifically provides "Contracts and Agreements Coverage," which applies to "contract and warranty claims related to farm operations * * *." The precise language of Coverage "N" is as follows:

> **We** pay for damages for * * * **property damage** resulting from liability assumed by an **insured** under a written contract made before the loss or a warranty of goods and products.

But, in a case involving similar policy language, we specifically held that " '[c]ontractual liability coverage' does not cover claims for breach of contract, but only covers tort liabilities of third parties that the insured has assumed by contract with the third party." *In re Liquidation of Excalibur Ins. Co.*, 519 N.W.2d 494, 497 (Minn.App.1994) (citation omitted), *review denied* (Minn. Oct. 4, 1994).[3] Because the Johnstones' breach of warranties claims do not arise from a liability of a third party that the Timmers assumed by contract, we conclude that the Johnstones' breach of warranties claims are not arguably covered by the RAM policy.

## B. Negligent Misrepresentation

Minnesota has adopted the Restatement of Torts definition of negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability

---

3. In our unpublished decision in *N. Branch Mut. Ins. Co. v. Bloom Lake Farms, Inc.*, 1995 WL 553875 (Minn.App. Sept.19, 1995), we reached the same conclusion for the identical Coverage "N" in another RAM policy. *See*

*Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn.App.1993) (holding that unpublished decisions are of persuasive value, at best).

for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Florenzano v. Olson,* 387 N.W.2d 168, 174 n. 3 (Minn.1986) (quoting Restatement (Second) of Torts § 552 (Tentative Draft No. 12, 1966)); *Bonhiver v. Graff,* 311 Minn. 111, 122, 248 N.W.2d 291, 298 (1976).

Assuming the Johnstones could prove the Timmers failed to exercise reasonable care in making false representations in connection with the sale of the cows and that the Johnstones relied on those representations, the next question is whether such a negligent misrepresentation claim would be within the coverage of the RAM policy.

*Intentional Act v. Occurrence*

■ RAM argues that the district court erred when it found that the Johnstones' negligent misrepresentation claim arose from an "occurrence." RAM asserts that since the Timmers necessarily intended to make any representation that they did make, any claim arising from a representation would not qualify as an "occurrence" and, for the same reasons, would fall under the policy exclusion for intentional acts.

■ The policy defines an "occurrence" as "an accident which is neither expected nor intended * * *." The policy's intentional-acts exclusion defines an intentional act as

> any act intended by an insured, or done at the direction of an insured, whether or not the bodily injury or property damage was intended[.]

(Emphasis omitted.) For support, RAM refers to this court's decision in *Tschimperle v. Aetna Cas. & Sur. Co.,* 529 N.W.2d 421 (Minn.App.1995), *review denied* (Minn. May 31, 1995).

In *Tschimperle,* the alleged negligent misrepresentation concerned the value of a tractor, which was said to be worth $149,750 when it was actually worth $59,000. *Id.* at 423. Our decision that such a misrepresentation would not be within the seller's liability coverage was based on the conclusion that a misrepresentation of value did not give rise to any "accident" and thus there could be no "occurrence." *Id.* at 424. We also noted that the misrepresentation in *Tschimperle* did not cause any "property damage," as defined in the policy. *Id.* at 425.

We do not consider *Tschimperle* to be applicable to the present facts. Here, it must be assumed that the Timmers intended to make the alleged representations, but a claim of negligent misrepresentation presupposes that they did not intend their representations to be false. Such a negligent misrepresentation may cause an "accident" where, as here, the allegedly false representation causes a buyer to accept delivery of diseased cattle that infect a formerly-healthy herd. That accident was neither expected nor intended and is an "occurrence." Moreover, since liability for a negligent misrepresentation does not require proof that it was intentionally false, the claim does not fall under the intentional-acts exclusion. That is, the relevant "act" for that exclusion is not the act of making a representation, but the act of making a *false* representation.

*Property Damage*

■ RAM argues that the district court erred because the Johnstones seek damages for economic losses, including lost profits, which are not "property damage" under the policy.

The policy defines "Property Damage" as

a. physical injury to tangible property including all resulting loss of use of that property; or

b. loss of use of tangible property that is not physically injured.

It is true that the term "property damage" does not include economic losses. *See, e.g., id.* at 425 (stating that lost investments or lost profits are economic losses and not property damage). As noted by the district court, however, it appears that the specific language of the RAM policy enlarges coverage to include damages in addition to "property damage." Coverage "L" states: "We pay * * * all sums for which an insured is liable by law *because of * * * property damage * * *.*" (emphasis omitted and emphasis added). Thus, the district court concluded, coverage is not limited to property damage, but includes other damages that flow from property damage.

In reaching this determination, the district court relied in part on this court's unpublished decision in *Western Nat'l Mut. Ins. Co. v. Frost Paint & Oil Corp.,* No. C3–97–1118, 1998 WL 27247 at *2 (Minn.App. Jan.27, 1998). The policy there provided coverage for "damages because of * * * property damage." *Id.* This court determined that, although "lost profits are not a form of 'property damage' for insurance coverage purposes[,]" the policy's express language permitted coverage for consequential losses, including lost profits flowing from physical injury to the insured's property. *Id.*

While not precedential, we are persuaded by the *Frost Paint* analysis. *See Dynamic Air,* 502 N.W.2d at 800. Although the Johnstones' lost profits or other consequential damages do not constitute property damage, they are "sums for which [the Timmers may be] liable by law because of * * * property damage."

*Business–Risk Doctrine*

RAM argues that the district court erred by failing to apply the business-risk doctrine. Under the business-risk doctrine, the risk that an insured's product will not meet contractual standards is a business risk not covered by a general liability policy. *Bor–Son Bldg. Corp. v. Employers Commercial Union Ins. Co.,* 323 N.W.2d 58, 63 (Minn.1982). As we recognized above, this doctrine applies to the breach of warranty claims, which we agree are not covered under either the personal liability coverage (Coverage "L") or the incidental liability coverage (Coverage "N"). This doctrine does not apply to the negligent misrepresentation claim, however, because it is not contractually based.

*Products–Sold Exclusion*

RAM argues that the district court erred by failing to find that the products-sold exclusion bars coverage of all 100 cows insured sold to buyer because the BVD virus arose out of the cows themselves. The policy's products-sold exclusion applies specifically to those claims brought under the "Personal Liability" section (Coverage "L"). The policy states:

Coverage "L" does not apply to liability which results directly or indirectly from:
* * * *

10. property damage to products manufactured, sold, handled or distributed by an insured when the property damage arises out of such products or a part of the products[.]

(Emphasis omitted.)

RAM is correct that this exclusion applies to the cow or cows that were diseased before they were delivered to the Johnstones. It does not, however, apply to those cows that were healthy at the time of delivery, or to the Johnstones' existing

herd, that was infected by the diseased cows.

Because a claim for negligent misrepresentation may involve an occurrence, and because none of the policy exclusions defeat coverage as a matter of law, the RAM policy arguably provides coverage for such a claim.

## C. Consumer Fraud Act

To the extent that the Johnstones' consumer fraud claim is based on intentional misrepresentations, there is no arguable coverage under the RAM policy, for the same reason that intentional common law fraud is not covered. But, we have construed the Minnesota Consumer Fraud Act to also apply to a negligent or unintentional misrepresentation. *Church of the Nativity of Our Lord v. WatPro, Inc.*, 474 N.W.2d 605, 612 (Minn.App.1991), *review granted* (1 pet.) (Minn. Oct 11, 1991), *review denied* (1 pet.) (Minn. Nov 26, 1991) *aff'd* 491 N.W.2d 1 (Minn.1992). Thus, if the Johnstones are able to sustain their burden of proving that they purchased diseased cows based on the Timmers' negligent or unintentional misrepresentation, RAM would be required to indemnify the Timmers for their liability under the Consumer Fraud Act.

## DECISION

In sum, because RAM is arguably required to indemnify the Timmers against the Johnstones' claims for negligent misrepresentation and negligent violation of the Consumer Fraud Act, we conclude that RAM must defend the Timmers against all the claims in the Johnstones' underlying complaint. We affirm the district court's summary judgment on this issue. But, because the Johnstones' other claims are not arguably indemnifiable, we conclude that the district court should have limited its summary judgment to the issue of

RAM's duty to defend and reserved jurisdiction over the issue of indemnification, to await a final determination in the Johnstones' action.

Affirmed in part, reversed in part, remanded, and motion denied.