**Kim GRUETZMACHER, Plaintiff,**

v.

**ACUITY, a Mutual Insurance Company, a Wisconsin Corporation (f/k/a Heritage Mutual Insurance Company), Defendant.**

**No. Civ.04–4780 (RHK/AJB).**

United States District Court, D. Minnesota.

March 23, 2005.

Meghan M. Elliott and Thomas C. Mielenhausen, Lindquist & Vennum, P.L.L.P., Minneapolis, MN, for Plaintiff.

Rodney Honkanen, Spence, Ricke, Sweeney and Gernes, P.A., St. Paul, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### INTRODUCTION

This case involves the interpretation of a homeowner's insurance policy issued by Defendant Acuity, a Mutual Insurance Company ("Acuity"), to Plaintiff Kim Gruetzmacher. In June 2002, while the policy was in effect, Gruetzmacher was sued. He tendered the defense of the action to Acuity but Acuity refused to provide a defense, contending that the lawsuit was not covered under the policy. The issue now before the Court is whether Acuity had a duty to defend Gruetzmacher. For the reasons set forth below, the Court determines that Acuity did have that duty, and it will grant Gruetzmacher's Motion for Summary Judgment.

### BACKGROUND

In June 2002, Gruetzmacher was insured under the terms of a homeowner's insurance policy issued by Acuity. Under the policy's Personal Liability coverage provision, where "a claim is made or a suit is brought against an insured for damages because of *bodily injury* ... caused by an *occurrence* to which this coverage applies," the policy will afford "a defense at [the insurer's] expense by counsel of [the insurer's] choice, even if the suit is groundless, false or fraudulent." (Elliott Aff. Ex. A. at A0011 (emphasis added).) "Bodily injury" is defined as "bodily harm, sickness or disease, including required care, loss of services and death that results." (*Id.* at A0003.) "Occurrence" is defined as "an *accident*, including exposure to conditions, which results, *during the policy period, in*: Bodily injury." (*Id.* (emphasis added).)

The policy also includes an intentional act exclusion which provides that "Personal Liability [coverage does] not apply to

bodily injury ... [w]hich is expected or intended by the insured."[1] (Elliott Aff. Ex. A at A0011.)

On June 4, 2002, Randall Egan brought suit (the "Egan Complaint") against Gruetzmacher and Hamline United Methodist Church ("Hamline") in state court, alleging that he had been unlawfully fired from his job at Hamline because of his sexual orientation. (*Id.* Ex. C.) Count III of the Egan Complaint stated a claim for "Tortious Interference with Employment" against Gruetzmacher. (*Id.* ¶¶ 56–60.) The Complaint alleged that Gruetzmacher, a lay-member of Hamline, had written a letter to Hamline's pastor expressing "his vehement, anti-homosexual views" (*Id.* ¶ 18) and, in doing so, had "intentionally, willfully and without justification interfered with Egan's employment relationship with" Hamline. (*Id.* ¶ 59.) The Complaint further alleged that:

> As a direct and proximate result of Gruetzmacher's tortuous [sic.] interference with Egan's employment contract with [Hamline], Egan has suffered and will continue to suffer damages, including lost pay, lost earning capacity, *physical pain*, emotional suffering, as well as damage to his name and reputation.

(*Id.* ¶ 60 (emphasis added).)

Gruetzmacher tendered the defense of the Egan Complaint to Acuity in June 2002 (*id.* Ex. G), which Acuity promptly rejected on the grounds that the policy did "not extend to bodily injury that is expected or intended by the insured." (*Id.* Ex. H.) Acuity informed Gruetzmacher that the "only claim Mr. Egan asserts against

you is that he alleges that you 'intentionally, willfully, and without justification' interfered with his employment relationship. Given that assertion, there is no coverage for damages from such a claim under the policy." (*Id.*) Acuity cited the following "pertinent portions of the policy" in support of its rejection of Gruetzmacher's tender of defense: the definition of "bodily injury," the Personal Liability coverage provision, and the exclusion for injury "expected or intended by the insured." It also cited the policy definition of "personal injury," and concluded by pointing out that "the definition of personal injury ... does not include a claim for tortious interference with employment." (*Id.*)

On July 10, 2002, Gruetzmacher responded, requesting that Acuity "please reconsider [its] position" and provide him a defense to the Egan Complaint. He wrote:

> I'm being sued for damages because I wrote a letter to Hamline United Methodist Church complaining about the way I was treated by Randy Egan. I never intended to harm him. All I wanted was an apology. I don't see how you can deny me a defense to this lawsuit when I never intended to injure anyone.

(*Id.* Ex. I.) Acuity replied that it had "reviewed [Gruetzmacher's] issues and concerns," and its "position concerning this matter remains the same." (*Id.* Ex. J.) Gruetzmacher then retained his own counsel and, in January 2004, Egan's claim against Gruetzmacher was dismissed after a summary judgment ruling in Gruetz-

---

1. The policy also covers "personal injury" which is defined as "injury arising out of one or more of the following offenses:
 a. False arrest, detention or imprisonment, or malicious prosecution;
 b. *Libel, slander or defamation of character;* or
 c. Invasion of privacy, wrongful eviction or wrongful entry."

(*Id.* at A0028 (emphasis added).) Gruetzmacher contends that Acuity's duty to defend was also triggered by this coverage provision. Because the Court determines that Acuity's duty to defend was triggered by the Personal Liability coverage provision, it does not reach the issue of personal injury coverage.

macher's favor. (*Id.* Ex. F.) This action followed.

Gruetzmacher alleges that Acuity breached the policy and its fiduciary duty to him by refusing to provide him with a defense to the Egan Complaint. He has now moved for summary judgment on his breach of contract claim. In response to Gruetzmacher's Motion for Summary Judgment, Acuity has requested that summary judgment be entered in its favor, contending that the policy did not cover the allegations in the Egan Complaint.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Mems v. City of St. Paul, Dep't of Fire & Safety Servs.,* 224 F.3d 735, 738 (8th Cir.2000). The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. *See Graves v. Arkansas Dep't of Fin. & Admin.,* 229 F.3d 721, 723 (8th Cir.2000); *Calvit v. Minneapolis Pub. Schs.,* 122 F.3d 1112, 1116 (8th Cir.1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Krenik v.*

*County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995).

## ANALYSIS

■■■ Under Minnesota law,[2] an insurer assumes two duties to its insured: the duty to defend and the duty to indemnify. *Reinsurance Assoc. of Minn. v. Timmer,* 641 N.W.2d 302, 307 (Minn.Ct.App.2002). The duty to defend under an insurance policy is broader than the duty to indemnify. *Meadowbrook, Inc. v. Tower Ins. Co.,* 559 N.W.2d 411, 415 (Minn.1997); *Amos v. Campbell,* 593 N.W.2d 263, 268 (Minn.Ct. App.1999) ("The duty to defend is much broader than the duty to indemnify." (citations omitted)). Minnesota has established a difficult evidentiary burden which an insurance carrier must satisfy in order to avoid providing a defense to claims under its insurance policy; a duty to defend an insured on a claim arises when any part of a claim against the insured is arguably within the policy's scope. *Reinsurance Assoc.,* 641 N.W.2d at 307. "If a complaint alleges several claims, and any one of them would require the insurer to indemnify, the insurer must provide a defense against all claims." *Id.* Thus, "an insurer who wishes to escape that duty has the burden of showing that all parts of the cause of action fall clearly outside the scope of coverage." *Jostens, Inc. v. Mission Ins. Co.,* 387 N.W.2d 161, 165–66 (Minn.1986). Further, "in determining whether there is a duty to defend, a court must give the benefit of the doubt to the insured" and, "[a]s a result, unless the pleadings and facts clearly establish that the claim falls outside the policy terms, the duty to defend arises." *John Deere Ins. Co. v. Shamrock Indus., Inc.,* 929 F.2d 413, 418

---

**2.** In insurance coverage actions involving diversity of citizenship, state law controls the analysis of the insurance policy. *Home Ins.* *Co. v. Aetna Ins. Co.,* 236 F.3d 927, 929 (8th Cir.2001). Minnesota law applies here.

(8th Cir.1991) (citations and quotations omitted) (applying Minnesota law).

■ In considering whether a duty to defend arises, a court considers the applicability of the duty as of the time the insured tendered the defense to the insurer. *Jostens*, 387 N.W.2d at 166. While the duty to defend is generally determined by comparing the allegations in the complaint with the language of the insurance policy, courts may look beyond the complaint to extrinsic facts to establish the existence or nonexistence of that duty. *Tschimperle v. Aetna Cas. & Sur. Co.*, 529 N.W.2d 421, 424 (Minn.Ct.App.1995). However, "where the insurer has no knowledge to the contrary, it may make an initial determination of whether or not it is obligated to defend from the facts alleged in the complaint against its insured." *Garvis v. Employers Mut. Cas. Co.*, 497 N.W.2d 254, 258 (Minn.1993) (citations omitted).

Accordingly, Gruetzmacher is entitled to summary judgment on the issue of Acuity's duty to defend if any part of the claim alleged against him in the Egan Complaint "arguably" falls within the provisions of the policy. The Egan Complaint alleges:

> As a direct and proximate result of Gruetzmacher's tortuous [sic.] interference with Egan's employment contract with [Hamline], Egan has suffered and will continue to suffer damages, including lost pay, lost earning capacity, *physical pain*, emotional suffering, as well as damage to his name and reputation.

(Elliott Aff. Ex. C ¶ 60 (emphasis added).) Acuity makes three arguments in support of its decision not to assume the defense of the Egan Complaint: (1) Egan's alleged injury does not fall under the Personal Liability Coverage provision because the injury was not due to an "occurrence," (2) the policy's intentional acts exclusion applies, and (3) the personal injury coverage provision does not apply because the Egan Complaint did not state a claim against Gruetzmacher for defamation.

## I. Occurrence

■ The Personal Liability Coverage provision of the policy provides that Acuity will provide a defense for Gruetzmacher if "a suit is brought against [him] for damages because of *bodily injury* ... caused by an *occurrence* to which this coverage applies." (*Id.* Ex. A at A0011 (emphasis added).) "Occurrence" is defined by the Policy as "an *accident*, including exposure to conditions, which results ... in [b]odily injury." (*Id.* at A0003.) Acuity argues that Egan's claim of tortious interference with his employment contract is not an "occurrence" because it alleges *intentional* (not accidental) conduct on the part of Gruetzmacher.[3] Gruetzmacher responds by asserting that he did not intend to cause bodily injury to Egan. According to Gruetzmacher, his actions were covered by the policy because under Minnesota law the term "accident" or "occurrence" encompasses unintended consequences resulting from intentional acts.

---

**3.** Acuity also suggests, in a footnote, that there is some question as to whether the allegation in the Egan Complaint that Egan suffered "physical pain" is covered under the policy's definition of "bodily injury." (Mem. in Opp'n at 4 n. 3.) Acuity's argument goes no further than to state that "Plaintiff cites no Minnesota cases holding that allegations of 'physical pain' alone amount to allegations of

bodily injury under a homeowner's policy." (*Id.*) Acuity did not raise this issue in its June 2002 letter denying Gruetzmacher's tender of defense. Furthermore, Acuity, not Gruetzmacher, "bears the burden of establishing that all parts of a cause of action clearly fall outside the scope of coverage." *Franklin v. Western Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 407 (Minn.1998) (citation omitted).

"In interpreting the word accident, [the Minnesota courts] are guided by the maxim that in insurance contracts, coverage provisions are construed according to the expectations of the insured and exclusions are construed narrowly." *American Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn.2001) (citation omitted). "Accident" is generally interpreted to mean "an unexpected, unforeseen, or undesigned happening or consequence"; under Minnesota law, "where there is no intent to injure, the incident is an accident, even if the conduct itself was intentional." *Id.* at 609, 612. Accordingly, the question becomes whether Egan's alleged bodily injury was "caused by an incident in which the resulting harm was unintended or unexpected by [Gruetzmacher]." *Id.* at 612–13.

The Egan Complaint did not allege that Gruetzmacher intended to cause bodily injury to Egan. Thus, Acuity rests its argument not on allegations that Gruetzmacher specifically intended to cause bodily injury to Egan, but on the fact that intentional conduct is a necessary element of a tortious interference claim. Acuity urges that because Egan alleged an "intentional act," "any resulting injury did not stem from an accident or occurrence." (Mem. in Opp'n at 6.) This position, however, misses the point; the policy covers unexpected bodily injury even where there was an intent to act. Egan simply asserted that by writing a letter to Hamline, Gruetzmacher was intentionally interfering with his employment contract; he did *not* allege that Gruetzmacher specifically intended to cause him *bodily injury*. As the state court noted in its summary judgment order dismissing Egan's claims against him: Gruetzmacher "wrote a letter to his

clergyman complaining about an employee. Nothing more. The letter can be characterized by some as distasteful, yet remains simply a letter from a parishioner." (Elliott Aff. Ex. F at 9.) Acuity has failed to establish that these allegations fall clearly outside the scope of the policy. *Jostens, Inc.*, 387 N.W.2d at 165–66; *See also Walser*, 628 N.W.2d at 613 (noting that the relevant inquiry is "whether [the insured] acted with specific intent to cause [the plaintiff's] injury."); *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978) ("The 'intent' required to exclude coverage is neither the 'intent *to act*' nor the 'intent to cause the *specific* injury complained of.' Rather it is the 'intent to *cause bodily injury*' even if the actual injury is more severe or of a different nature than the injury intended." (emphasis in original) (citations and footnotes omitted)).

Nor has Acuity been able to direct the Court's attention to any persuasive authority compelling a contrary conclusion. The cases that Acuity has cited do not discuss, nor appear to consider, the definition under Minnesota law of "accident" as it applies to facts similar to the instant case.[4] *See Franklin v. Western Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 408 (Minn.1998) (stating, without discussion, "[f]urthermore, the trespass count in the counterclaim specifically referred to *intentional* acts by Franklin, thereby taking it outside the definition of 'occurrence'" (emphasis in original)); *Meadowbrook*, 559 N.W.2d 411, 419 n. 20 (stating in a footnote that the plaintiff's "claim for reprisal ... includes as a necessary element the intent to harm the plaintiffs. The policy covers only those bodily injury claims caused by accidental or unintentional behavior, consequently,

---

4. This is in contrast to *Walser*, where the Minnesota Supreme Court addressed the issue of intentional acts, unintended injuries, and the definition of "accident," in the context of allegations of an intentional tort where the insurance policy was similar to the instant policy. 628 N.W.2d at 611–13. Acuity did not cite *Walser* in its Memorandum, nor did it convincingly distinguish the case at oral argument.

the policy clearly does not cover the claim for reprisal." (internal citations omitted)); *St. Paul Fire & Marine Ins. Co. v. Lenzmeier,* 309 Minn. 134, 243 N.W.2d 153, 156 (1976) (where the court's only mention of the issue of intent is that "the explicit terms of the policy exclude coverage for damages arising out of the rendition of professional services *or this type of intentional tort"* (emphasis added)).

 Finally, Acuity had information external to the Egan Complaint establishing that the claims against Gruetzmacher could arguably be covered under the policy. In his July 10, 2002 letter, Gruetzmacher clearly informed Acuity that he did not intend to injure Egan and stated that he "never intended to harm [Egan]" and that he did not "see how [Acuity could] deny [him] a defense to this lawsuit when [he] never intended to injure anyone." (Elliott Aff. Ex. I.) This letter clearly raised "a question as to whether he actually intended" to cause injury to Egan. *Denike v. Western Nat'l Mut. Ins. Co.,* 473 N.W.2d 370, 374 (Minn.Ct.App.1991). Such "facts outside the complaint" are to be considered by the insurer in determining whether it has a duty to defend an insured, and "[a]ny ambiguity is resolved in favor of the insured." *Id.* at 373; *cf. Garvis,* 497 N.W.2d at 258 (holding that insurer did not have a duty to investigate beyond the complaint where "none of the facts alleged in plaintiff's complaint put the insurer on notice of a claim within the policy coverage" and the insured tendered defense of the lawsuit to the insurer, but "in neither letter tendering the defense was the insurer told that plaintiff was claiming . . ." a covered injury). Accordingly, the Court determines, under the facts of the present case, that the requirement that any bodily injury be caused by an "occurrence" for the Personal Liability coverage provision to apply does not negate Acuity's duty to defend the Egan Complaint.

## II. Intentional Acts Exclusion

 The Court next considers whether the policy's intentional acts exclusionary provision relieves Acuity of its duty to defend. The exclusionary provision provides that "Personal liability [coverage does] not apply to bodily injury . . . [w]hich is expected or intended by the insured." (Elliott Aff. Ex. A at A0011.) Acuity alleges that it has no duty to defend Gruetzmacher because the claim alleged against him is an intentional tort, and, accordingly, his intent must be inferred as a matter of law.

The Minnesota courts "have stated that the purpose of intentional act exclusions is to exclude insurance coverage for wanton and malicious acts by an insured, and therefore [the court] may, absent a finding of specific intent to injure, infer intent to injure as a matter of law." *Walser,* 628 N.W.2d at 613 (citation omitted). Cases where the courts have inferred intent to injure generally involve "insureds [who] acted in a manner in which they knew or should have known that some harm was substantially certain to result; that is, they acted with deliberate and calculated indifference to the risk of injury." *Id.* at 614 (citing cases). Statements outside the pleadings made by the insured may be considered in determining whether intent can be inferred as a matter of law. *Garvis,* 497 N.W.2d at 258 ("[I]f the insured tells the insurer of [facts indicating that there may be a claim], or if the insurer has some independent knowledge of such facts, then the insurer must either accept tender of the defense or further investigate the potential claim." (citation omitted)).

The acts charged in the Egan Complaint distinguish it from the cases relied upon by Acuity; the facts of those cases are more extreme than the facts presented here. *Walser,* 628 N.W.2d at 614. In *Woida v. North Star Mut. Ins. Co.,* 306

N.W.2d 570 (Minn.1981), the court held that an intentional act exclusion applied where the insured shot a security guard. The court found that the insured "knew that the guards' truck was occupied at the time the shots were fired ... [y]et, they proceeded to fire through the windshield of the vehicle." *Id.* at 573. In *Rulli v. State Farm Fire and Cas. Co.*, 479 N.W.2d 87 (Minn.Ct.App.1992), the court held that an intentional act exclusion applied where the insured was charged with sexual assault and battery. The court stated that "[i]t is the character of the nonconsensual sexual act that results in the mandatory inference [of intent]." [5] *Id.* at 89.

■ The facts presented here do not support the conclusion that Gruetzmacher acted with "deliberate and calculated indifference to the risk" of Egan's injury. *Walser*, 628 N.W.2d at 614. In *Walser*, the Minnesota Supreme Court held that intent could not be inferred where the insured pulled on the ankles of a fellow student who was hanging onto the rim of a basketball-hoop causing that student to lose his grip and fall; the court specifically noted that *Woida* and cases involving "some type of sexual contact" were sufficiently extreme to justify inferring intent as a matter of law. *Id.* In the instant case, however, while the underlying act (Gruetzmacher's writing of the letter to

Hamline) was certainly intentional, it is clear that such an act was not done with deliberate and calculated indifference to any injury to Egan.[6] There is no dispute that Gruetzmacher did not have the actual intent to cause bodily injury to Egan. Without the specific intent to cause injury, the writing of the letter to Hamline in and of itself is not so extreme as to warrant the inference of intent to injure as a matter of law. Because "it is the intent to injure rather than intent to act which triggers the [intentional acts] exclusion's applicability," *Brown v. State Auto. & Cas. Underwriters*, 293 N.W.2d 822, 826 (Minn. 1980) (internal citation omitted), the Court determines that Acuity has not carried its burden and that the Egan Complaint alleged claims arguably within the Personal Liability coverage provision of the policy.

### III. Summary

Based on the materials and record presented, the allegations in Count III of the Egan Complaint triggered Acuity's duty to defend Gruetzmacher under the policy. This ends the Court's inquiry.[7] *See, e.g., Fireman's Fund Ins. Co. v. Hartford Fire Ins. Co.*, 73 F.3d 811, 816 (8th Cir.1996) (stating that "if *any* part of a cause of action is arguably within the scope of coverage, the insurer must defend" (emphasis added) (citations omitted) (applying

---

**5.** While the court in *Rulli* extended its holding that the insurer had no duty to defend the insured to a claim of "intentional interference with a contract for employment," the court had already determined that the character of the alleged sexual misconduct on the part of the insured mandated an inference of intent. 479 N.W.2d at 89. Furthermore, *Rulli* was decided before *Walser*, and *Walser* controls the Court's analysis of the intentional acts exclusionary provision in the instant case. Accordingly, the persuasiveness of this holding in the circumstances of the instant action is questionable.

**6.** The state court, in dismissing the charge against Gruetzmacher in the Egan Complaint, came to a conclusion consistent with the Court's determination here. (Elliott Aff. Ex. F.) In the court's Memorandum of Law, it stated that "the act of writing The Letter cannot be deemed a tortious act under the laws of our State. Furthermore, there is no evidence to support that [Gruetzmacher] intended to have [Egan] removed from his employment at [Hamline]." (*Id.* at 7.)

**7.** Specifically, the Court need not determine whether any aspect of the claim against Gruetzmacher would arguably fall within the policy's "personal injury" coverage provision.

Minnesota law)); *Tschimperle*, 529 N.W.2d at 424 ("If *any* claim is arguably within the scope of coverage of the insurance policy, the insurer must defend." (emphasis added) (citation omitted)); *see also Home Ins. Co. v. Waycrosse, Inc.*, 990 F.Supp. 720, 730 n. 10 (D.Minn.1996) (finding that the insurer had a duty to defend under the "advertising injury" provision of the insurance policies "end[ed] the Court's inquiry"; noting that the Court need not "determine whether any of the claims in [the] Complaint arguably fall within the coverage for 'property damage' under any of the policies").

## CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein **IT IS ORDERED** that Plaintiff Kim Gruetzmacher's Motion for Summary Judgment (Doc. No. 11) is **GRANTED** and Defendant Acuity's request for summary judgment is **DENIED**.